J-S29013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON MICHAEL WOODALL | : | |
| | : | |
| Appellant | : | No. 876 WDA 2024 |

Appeal from the Judgment of Sentence Entered July 15, 2024
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0000746-2023

BEFORE: NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.: **FILED: January 22, 2026**

Appellant Jason Michael Woodall appeals *pro se* from the judgment of sentence imposed following his convictions for delivery a controlled substance (cocaine) and possession of a controlled substance (cocaine).[1] Appellant raises numerous claims on appeal, including violations of the compulsory joinder rule, improper venue, violation of his speedy trial rights, the instant charges were barred by the statute of limitations, **Brady**[2] violations, and prosecutorial misconduct. We affirm.

The underlying facts and procedural history of this case are well known to the parties. **See** Trial Ct. Op., 9/18/24, at 1-4; Trial Ct. Op. & Order,

_____

[1] 35 P.S. § 780-113(a)(30) and (16), respectively.

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

1/26/24, at 4-8, 10, 12.[3] Briefly, on March 2, 2021, a criminal complaint was filed charging Appellant with six counts of delivery of a controlled substance (cocaine) and six counts of possession of a controlled substance (cocaine), in connection with six narcotics transactions with one or more confidential informants (CI). Appellant was arrested on April 14, 2023. Appellant filed a counseled omnibus pretrial motion seeking to dismiss this matter based on violations of Pa.R.Crim.P. 600 and 18 Pa.C.S. § 110, as well as raising claims that the Court of Common Pleas of Washington County was the improper venue and lacked subject matter jurisdiction. The trial court denied this motion. Subsequently, after a hearing, the trial court granted Appellant's counsel leave to withdraw and allowed Appellant to proceed *pro se*. Appellant filed several *pro se* pre-trial motions, which the trial court denied. Following a jury trial, Appellant was convicted of all charges on April 11, 2024.

On July 15, 2024, the trial court sentenced Appellant to an aggregate term of ten to twenty years' incarceration. On July 22, 2024, Appellant simultaneously filed a post-sentence motion (captioned as "sentence manipulation/entrapment modification motion"), a notice of appeal, and a Pa.R.A.P. 1925(b) statement. The trial court denied Appellant's post-sentence

_____

[3] The Honorable Jesse Pettit, who presided over Appellant's trial and sentencing hearing, wrote the September 18, 2024 Rule 1925(a) opinion, as well as the March 14, 2024 opinion and order, and April 1, 2024 memorandum and order. The Honorable Valerie Costanzo, who presided over the hearings on Appellant's counseled motion for bail and counseled omnibus pretrial motion, wrote the January 26, 2024 opinion and order.

motion on September 17, 2024.[4]

The trial court filed a Rule 1925(a) opinion addressing Appellant's issues and adopting the analysis set forth in the trial court's January 26, 2024 opinion and order, March 14, 2024 opinion and order, and April 1, 2024 memorandum and order.[5]

On appeal, Appellant raises the following issues, which we restate verbatim:

1. Warrantless GPS usage.

2. Fabricated fraudulent evidence control logs.

3. Unconstitutional venue change lack of subject matter jurisdiction.

4. Double jeopardy clause pursuant to 18 Pa C.S. 110.

5. Rule 600 lack of due diligence.

6. Rule 600, 180 days of pretrial confinement.

7. Hearsay testimony during preliminary hearing.

8. Invalid affidavit & arrest warrant.

9. Invalid arrest warrant.

10. Stale charges.

_____

[4] Appellant's notice of appeal was premature because he filed it simultaneously with his post-sentence motion. *See Commonwealth v. Muhammed*, 219 A.3d 1207, 1210 n.5 (Pa. Super. 2019); *see also* Pa.R.Crim.P. 720(A)(2); Pa.R.A.P. 108(d)(1), 903(c)(3). However, because the trial court subsequently denied Appellant's post-sentence motion, we will treat Appellant's notice of appeal as timely. *See Muhammed*, 219 A.3d at 1210 n.5.

[5] The trial court did not order Appellant to file a Rule 1925(b) statement.

11. Prosecutorial misconduct.

12. Unconstitutionally denied bail.

13. Compel confidential informant.

14. Suggestive single photo identification procedure.

15. Ineffective assistant of pretrial counsel.

Appellant's Brief at 2, 18, 35, 43, 47, 59, 68, 71, 75, 77, 81, 89, 97, 100, 105 (unpaginated) (some formatting altered).[6,7]

## Rule 1925(b) Waiver

Before we address the merits of Appellant's claims, we must address whether Appellant has preserved them for our review. *See Commonwealth v. Edmondson*, 718 A.2d 751, 752 n.7 (Pa. 1998) (explaining that appellate courts may raise the issue of waiver *sua sponte*).

In its Rule 1925(a) opinion, the trial court concluded that Appellant waived his claims for review because Appellant "has failed to follow the requirements, relating to his Concise Statement, as set forth in Pa.R.A.P. 1925(b)(4)(iv)[.]" Trial Ct. Op., 9/18/24, at 5. Further, the trial court

_____

[6] We note that Appellant's brief does not contain a statement of questions presented as required by the Rules of Appellate Procedure. *See* Pa.R.A.P. 2111(a)(4), 2116. We derive these issues from the headings in Appellant's brief. Further, Appellant's brief lacks a statement of jurisdiction, a statement of both the scope of review and the standard of review, a statement of the case, a summary of argument, and a statement of compliance with the word count limit of Pa.R.A.P. 2135. *See* Pa.R.A.P. 2111(a)(1), (3), (5), (6), (12); 2135(a), (d).

[7] Additionally, Appellant's brief contains a section captioned "Addendum" which contains additional allegations of prosecutorial misconduct. *See* Appellant's Brief at 108-19.

explained that several of Appellant's issues were too vague for the trial court to address. *See id.* at 40 (explaining that Appellant's claim that "he has a 'standing objection' to each side-bar ruling that was against his well-established constitutional rights[]" was "waived for vagueness and lack of development"); *id.* at 44 (stating that Appellant asserted in his Rule 1925(b) statement that "the prosecutor at trial, engaged in 'blatant and cumulative prosecutorial misconducts' throughout the case[,]" and that Appellant "fails to cite to specific incidents to support his claim").

"[T]he applicability of waiver principles . . . is a question of law, over which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Barbour*, 189 A.3d 944, 954 (Pa. 2018) (citations omitted).

Initially, we must determine whether Appellant's Rule 1925(b) statement complies with the Pennsylvania Rules of Appellate Procedure. It is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review. *See* Pa.R.A.P. 1925(b)(4)(vii); *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998).

This Court has held that when an appellant files a Rule 1925(b) statement before the trial court orders one, "there is no need for the trial court" to request one. *Commonwealth v. Nobles*, 941 A.2d 50, 52 (Pa. Super. 2008). However, if the appellant fails to include a claim in a voluntarily filed Rule 1925(b) statement, that claim is waived on appeal. *See id.* As the *Nobles* Court reasoned, this Court will not encourage "'sandbagging' by

[appellants] if they are allowed to quickly file a Rule 1925(b) statement and then claim that nothing is waived because the Rule 1925(b) statement was not in response to a formal request." *Id.*

Rule 1925(b) also provides that an appellant's concise statement must "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). As this Court has explained, Rule 1925(b) "is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal." *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020) (citation omitted).

Further, a Rule 1925(b) statement should only identify the errors made by the trial court; it should not be a lengthy narrative of facts, procedural history, explanations, or arguments. *See* Pa.R.A.P. 1925(b)(4)(iv). "Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by filing any statement. Rather, the statement must be 'concise' and coherent as to permit the trial court to understand the specific issues being raised on appeal." *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1038 (Pa. Super. 2018) (citation omitted and some formatting altered). "The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised." *Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011) (citation omitted).

"If a [Rule] 1925(b) statement is too outrageous, we have dismissed the appeal without addressing any of the issues raised." ***Vurimindi***, 200 A.3d at 1038 (citation omitted). However, this Court has recognized that "not all lengthy [Rule] 1925(b) statements require dismissal of the appeal." ***Id.*** at 1039. In ***Vurimindi***, this Court held that the *pro se* defendant waived all of the issues he attempted to raise by filing a fifty-three-page Rule 1925(b) statement. ***See id.*** at 1040, 1043; ***see also Commonwealth v. Reynolds***, 339 MDA 2025, 2025 WL 3514366, at \*3 (Pa. Super. filed Dec. 8, 2025) (unpublished mem.) (concluding that the defendant waived all of his issues on appeal where the defendant's thirty-page Rule 1925(b) statement was "neither concise nor compliant with Pa.R.A.P. 1925(b)(4)").[8]

It is well-established that

> *pro se* status does not relieve [a litigant] of his duty to follow the Rules of Appellate Procedure. Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing. Accordingly, *pro se* litigants must comply with the procedural rules set forth in the Pennsylvania Rules of Court; if there are considerable defects, we will be unable to perform appellate review.

***Vurimindi***, 200 A.3d at 1037-38 (citations omitted and some formatting altered).

_____

[8] ***See*** Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

Here, Appellant did not include his challenges to the validity of the arrest warrant in his Rule 1925(b) statement; therefore, those issues are waived on appeal. **See** Pa.R.A.P. 1925(b)(4)(vii); **Lord**, 719 A.2d at 309; **Nobles**, 941 A.2d at 52.

Next, following our review, we agree with the trial court that Appellant's Rule 1925(b) statement does not comply with our Rules of Appellate Procedure because Appellant failed to succinctly identify the issues he intended to raise on appeal and several issues are too vague to identify . **See** Trial Ct. Op., 9/18/24, at 5, 40, 44; Pa.R.A.P. 1925(b)(4)(iv). Specifically, Appellant filed a twenty-six-page Rule 1925(b) statement which included twenty-four issues with a lengthy recitation of purportedly inconsistent testimony and often vague allegations of misconduct by the police and the Washington County District Attorney's Office. **See** Rule 1925(b) Statement, 7/22/24, at 1-26 (unpaginated). Based on the foregoing, we conclude that Appellant has waived his claims on appeal.[9] **See** Pa.R.A.P. 1925(b)(4)(iv);

---

[9] In any event, even if Appellant properly preserved his issues for review, we would affirm based on the trial court's analysis of these claims with the exception of the trial court's references to non-precedential decisions of this Court filed prior to May 1, 2019. **See** Trial Ct. Op., 9/18/24, at 5-52; Trial Ct. Mem. & Order, 4/1/24, at 1-6 (unpaginated); Trial Ct. Op. & Order, 3/14/24, at 1-4 (unpaginated); Trial Ct. Op. & Order, 1/26/24, at 2-19. Further, we note that the trial court's opinions contain some typographical errors. On page 8 of the September 18, 2024 opinion, a citation should read "T.T., vol. I, <u>137</u>, line <u>9-20</u>, 4/9/24." **See** Trial Ct. Op., 9/18/24, at 8. Further, on page 2 of the January 26, 2024 opinion and order; the citation should read "**Commonwealth v Barbour**, 189 A.3d <u>944</u>, 954 (Pa. 2018)." **See** Trial Ct. Op. & Order, 1/26/24, at 2.
*(Footnote Continued Next Page)*

***Vurimindi***, 200 A.3d at 1038-40; ***Hansley***, 24 A.3d at 415; ***Reynolds***, 339 MDA 2025, 2025 WL 3514366, at *3.

Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed. Application for post-submission communication denied.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/22/2026

---

The parties are directed to attach a copy of the trial court's opinions in the event of further proceedings.

Copies to: District Attorney; Public Defender; Defendant; Superior Court of PA

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | |
| vs. | ) | No.  876 WDA 2024 |
| | ) | |
| | ) | |
| JASON MICHAEL WOODALL, | ) | |
| | ) | |
| Appellant. | ) | |

Appeal from the Opinion and Orders entered on April 14, 2023; June 22, 2023; December 15, 2023; January 26, 2024; March 14, 2024; March 25, 2024; April 1, 2024; April 5, 2024; May 16, 2024; June 21, 2024; and July 8, 2024
In the Court of Common Pleas of Washington County
Criminal Division at No: CP-63-CR-000746-2023

## RULE 1925(a) OPINION

Before the Court is the Notice of Appeal filed on behalf of Defendant/Appellant Jason Michael Woodall (hereinafter "Defendant") in the above-captioned case at Criminal Division Docket No. 746-2023. This opinion is written in support of the following Opinions and Orders: April 14, 2023; June 22, 2023; December 15, 2023; January 26, 2024; March 14, 2024; March 25, 2024; April 1, 2024; April 5, 2024; May 16, 2024; June 21, 2024; July 8, 2024[1]; and July 15, 2024.

By way of an amended Bill of Information filed on December 20, 2023, the Commonwealth charged Defendant with six counts of Delivery of a Controlled Substance, cocaine, 35 P.S. § 780-113(a)(30), an ungraded Felony; and six counts of Possession of a Controlled Substance, cocaine, 35 P.S. § 780-113(a)(16), an ungraded Misdemeanor.

---

[1] See Sentencing Hr'g Tr, 7/5/2024.

Defendant was initially represented by Attorney Adam Yarussi (hereinafter "Attorney Yarussi"). Attorney Yarussi filed a Motion to Set Bail on May 16, 2023 and a hearing was set for June 20, 2023. An order denying bail was filed June 22, 2023. Attorney Yarussi then filed an Omnibus Pretrial Motion on July 27, 2023, which included a Motion to Dismiss Pursuant to Rule 600; Motion to Dismiss Pursuant to 18 Pa.C.S. § 110; Motion to Dismiss Pursuant to 42 Pa.C.S. § 5552(a); Motion to Dismiss: Improper Venue and Lack of Subject Matter Jurisdiction; Motion to Reveal Confidential Informant Identity; Motion to Set Bail; and Motion to Compel Discovery. *See* Defendant's Omnibus Pre-Trial Motion, 7/27/2023. An Omnibus Pretrial Hearing was held on October 13, 2023 and the Honorable Valarie Costanzo filed an Opinion and Order on January 26, 2024.[2] Defendant filed multiple pro se pleadings during this period of time while still being represented.[3]

The Commonwealth filed a Motion to Amend Criminal Information on December 20, 2023. Attorney Yarussi consented to the amendment of the criminal information, and Judge Valarie Costanzo signed the consent order on December 15, 2023. An Amended Information was filed on December 20, 2023. On February 14, 2024, Attorney Yarussi filed a Motion to Withdraw as Counsel.[4] An Order granting Attorney Yarussi's request to withdraw was filed on February 22, 2024. Defendant filed a pro se "Motion to Request to Proceed Pro se" on February 23, 2024. On March 5, 2024, the Court accepted Defendant's waiver of counsel and appointed stand-by counsel in the event that termination of his self-representation was necessary.

---

[2] On January 1, 2024, by way of Administrative Order by Washington County President Judge John DiSalle dated November 29, 2023, the undersigned was assigned to the Washington County Criminal Docket, which included the above-captioned case. Judge Valarie Costanzo was reassigned to the Family Court and Juvenile Dependency Dockets.

[3] Defendant's pro se pleadings were addressed by way of letter addressed to Attorney Yarussi explaining that Defendant is not entitled to hybrid representation. *See Commonwealth v. Ellis*, 626 A.2d 1137, 1139 (Pa. 1993).

[4] Another Motion to Withdraw as Counsel was filed February 15, 2024. It appears the only change was a change in the presentation date.

Defendant requested his pro se pleadings, which were filed while he was represented by counsel, to be reinstated. Defendant's request was denied; however he was permitted to refile the pleadings. *See* Court Order, 3/5/2024.

Defendant filed several motions prior to the commencement of the jury trial. Defendant filed a pro se "Motion Pursuant to Rule 600(B), (D)(2) and (E)" on February 23, 2024. A hearing was scheduled for March 12, 2024 for the limited purpose of determining whether Defendant was entitled to immediate release on nominal bail since Judge Costanzo's January 26, 2024 Opinion and Order previously addressed the due diligence issue raised by Defendant regarding Rule 600. Defendant's motion was denied by way of Opinion and Order dated March 14, 2024.

Defendant filed an "Omnibus Pretrial Motion Briefing" on March 7, 2024. On March 25, 2024, a Memorandum and Order was filed denying Defendant's motion in its entirety. Defendant also filed a pro se "Motion(s)-In-Limine" on March 7, 2024. A separate Memorandum and Order was filed April 1, 2024, which denied Defendant's motion in its entirety. Defendant filed another "Motion(s) In Limine" on March 19, 2024, which was denied by way of Court Order dated April 5, 2024.

After the completion of a pretrial conference on March 27, 2024, this case was scheduled for a jury trial during the April 2024 trial term. Another pretrial proceeding was held on April 4, 2024 to address last-minute trial issues. After pre-trial proceedings and jury selection on April 8, 2024, Defendant's jury trial took place April 9, 2024 through April 11, 2024. A hearing was held on April 10, 2024, outside of the presence of the jury, to address Defendant's oral motion seeking dismissal of charges relating to the issue of a GPS tracking device. Defendant's oral motion was denied at the conclusion of the hearing. Pretrial Motion Hr'g Tr., 28, 4/10/24. Defendant was

3

found guilty on April 11, 2024 of six counts of delivery of a controlled substance, cocaine, and six counts of possession of a controlled substance, cocaine. *See* Verdict Order, 4/12/24.

Before Defendant's sentencing, Defendant filed three motions on April 25, 2024: "Deceleration in Support of Motion to Proceed In Forma Pauperis", "Motion to Suppress Nunc Pro Tunc"; and "Motion Requesting Transcripts and Exhibits Pursuant to Pa. R. J. A. 4007(E)." Defendant's request to proceed in forma pauperis was granted via a Court Order April 29, 2024. Defendant's request for transcripts and exhibits was granted on May 10, 2024. Defendant filed a "Brief in Support of Motion to Suppress Nunc Pro Tunc" on May 7, 2024. Defendant's motion was denied as the issue was previously addressed and ruled on after an evidentiary hearing held on April 10, 2024. *See* Court Order, 5/16/2024.

On June 14, 2024, Defendant filed a "Brady Violations Motions to Dismiss." This motion was denied by way of Order entered on June 21, 2024. Defendant's sentencing hearing was originally scheduled for July 8, 2024; however, the hearing was continued for one (1) week at the request of the Commonwealth. Defendant was ultimately sentenced, after a hearing, on July 15, 2024.

On July 22, 2024, Defendant filed a pro se Notice of Appeal, "1925(b) Concise Statements", and a "Direct Appeal" pleading, which appears to be a written brief in support of the issues set forth in Defendant's Concise Statement.[5] Defendant contemporaneously filed a "Sentence Manipulation/Entrapment Modification Motion" on July 22, 2024.

---

[5] Defendant argues in his "Direct Appeal" brief that transcripts were withheld from him. This Court granted Defendant's request for transcripts via a May 10, 2024 Order. At the time of Defendant's filing of this appeal, the transcripts relating to the jury trial had not been completed by the court reporter. This Court filed the Request for Trial Transcript on May 1, 2024. Defendant chose to file his Notice of Appeal, Concise Statement and Direct Appeal brief on July 22, 2024, which was seven days after he was sentenced. This Court reviewed, signed and filed the trial transcripts immediately upon receiving the completed transcripts from the court reporter.

Defendant has failed follow the requirements, relating to his Concise Statement, as set forth in Pa.R.A.P. 1925(b)(4)(iv), ("The Statement should not be redundant or provide lengthy explanations as to any error.") This Court attempts to address each issue raised in Defendant's 1925(b) Concise Statement, in order, which he is pursuing on appeal, below.[6]

## DISCUSSION

### A. Untimely Filing of the Instant Charges

#### 1.      Standard of Review

A question regarding the application of the statute of limitations is a question of law. *See Commonwealth v. Russell*, 938 A.2d 1082, 1087 (Pa.Super.2007). "Where the petitioner raises questions of law, our standard of review is de novo and our scope of review plenary." *Commonwealth v. Riding*, 2013 PA Super 141, 68 A.3d 990, 993 (Pa. Super. Ct. 2013).

#### 2.      Court's Analysis

Defendant argues that counts seven through twelve of the Bill of Information should have been dismissed because the charges were filed beyond the statute of limitations. Defendant, through counsel, filed an Omnibus Pre-Trial Motion on July 27, 2023. Defendant did not include a Motion to Dismiss Pursuant to 42 Pa.C.S. §5552(a) in his Omnibus Pre-Trial Motion. Defendant, however, attempted to raise a motion seeking to dismiss counts seven through twelve of the Bill of Information, pursuant to 42 Pa.C.S. §5552(a), in his brief, which was filed on December 1, 2023. Judge Costanzo denied the motion to dismiss by way of Opinion and Order dated January 26, 2024. The reasons for the Court's January 26, 2024 Order already appear of record in said Opinion and Order. Therefore, this Court hereby incorporates the same as its

---

[6] Defendant references "Direct Appeal" exhibits; however, no exhibits were filed with the Washington County Clerk of Courts Office regarding the "Direct Appeal" pleading.

5

Pa.R.A.P. 1925(a) Opinion and attaches it hereto. For the reasons set forth in the January 26, 2024 Opinion and Order, this Court respectfully submits that its order be affirmed on the merits and Defendant's appeal be dismissed.

## B. Improper Venue and Lack of Subject Matter Jurisdiction

### 1. Standard of Review

"As this question [regarding subject matter jurisdiction] is purely one of law, our standard of review is de novo, and our scope of review is plenary." *Commonwealth v. Jones*, 929 A.2d 205, 211 (Pa. 2007) (internal citations omitted).

"The standard of review for a denial of a motion for change of venue is whether there has been an abuse of discretion on the part of the trial judge." *Commonwealth v. Devries*, 112 A.3d 663, 666 (Pa. Super. 2015) (internal citations omitted).

### 2. Court's Analysis

Defendant next argues that this Court lacked subject matter jurisdiction over the prosecution of the charges stemming from conduct occurring in Allegheny County and, furthermore, venue was improper in Washington County.

Defendant filed an Omnibus Pretrial Motion on July 27, 2023, which included a Motion to Dismiss Improper Venue and Lack of Subject Matter Jurisdiction (Allegheny County Charges). Judge Costanzo, following the October 13, 2023 hearing, denied the motion to dismiss by way of Opinion and Order dated January 26, 2024. The reasons for the Court's January 26, 2024 Order already appear of record in said Opinion and Order. Therefore, this Court hereby incorporates the same as its Pa.R.A.P. 1925(a) Opinion and attaches it hereto. For the reasons set forth in the January 26, 2024 Opinion and Order, this Court respectfully submits that its order be affirmed on the merits and Defendant's appeal be dismissed.

6

## C. Warrantless Use of Mobile Tracking Device

Defendant next appears to argue in Section C of his Concise Statement that law enforcement utilized a mobile tracking device during its investigation without a warrant or court order. Defendant initially raised this argument at trial.

Defendant made an oral motion prior to the commencement of the second day of trial seeking dismissal of the charges. Pretrial Motion Hr'g Tr., 5, 4/10/24. Defendant asserted that the evidence presented by the Commonwealth to the jury on the first day of trial demonstrated that law enforcement utilized a GPS tracking device during the course of the investigation, without first obtaining a warrant. Defendant sought dismissal of the charges based on the fruit of the poisonous tree doctrine. Defendant, in support of his oral motion for immediate dismissal of the charges, argued that Agent Barna testified at trial that the Office of Attorney General utilized a GPS tracking device without obtaining a court order or warrant. Defendant's argument is not supported by the record evidence.

Agent Barna, during cross-examination, testified as follows:

Q: How are you doing, Agent Barna?

A: Good, sir. How are you?

Q: All right. First, before we go any further, you stated that you had a tracker on the vehicle?

A: Yes.

Q: Did you have a warrant for the tracker?

A: Yes.

Q: You did?

A: Yes.

Q: Why wasn't it in the discovery?

A: We didn't use it as evidence for anything other than furthering the investigation.

TT, vol. I, 136, line 4-15, 4/9/24.

The Court, based on Defendant's oral motion, held an evidentiary hearing outside of the jury during the second day of trial to further develop the record regarding Defendant's argument. Agent Barna testified at the hearing. TT, vol. I, 37-206, 4/9/24. Agent Barna again testified that the Pennsylvania Office of Attorney General had obtained an appropriate court order under the Wiretap Act to place a tracking device on Defendant's vehicle during the course of the investigation. Pretrial Motion Hr'g Tr., 22, 4/10/24. Agent Barna explained that, when Pennsylvania Office of Attorney General narcotics agents utilize a tracking device, the agents "have to have a court order and appropriate paperwork with the Office of Attorney General. It's a very formal process. So, yes, we had a warrant signed by a judge." *Id.* This Court found Agent Barna's testimony at the hearing to be credible. "A fact-finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. James*, 1223 WDA 2014, 2016 WL 418146, at 2 (Pa. Super. Ct. Feb. 3, 2016) (internal citations omitted). The fact-finder is exclusively tasked with assessing the credibility of the witnesses or evidence presented at trial. *Id.* (internal citations omitted).

Defendant was permitted an opportunity to cross-examine Agent Barna, both at trial and then at the hearing regarding Defendant's motion, regarding details surrounding the warrant the was signed by a judge. *See* TT., vol. I, 4/9/24; *see also* Pretrial Motion Hr'g Tr., 22, 4/10/24. This Court submits, based on the record evidence, that Defendant's claim that a GPS tracking device was utilized during the course of the investigation without a warrant and/or court order is without merit. Furthermore, the evidence presented by the Commonwealth to the jury did not include testimony or evidence that a GPS tracking device was utilized by law enforcement during the six controlled buys which resulted in the filing of charges against Defendant.

8

Defendant's claim is not supported by the record and should be dismissed.

### D. Use of Hearsay Testimony at Preliminary Hearing

#### 1. Standard of Review

"The evidentiary sufficiency of the Commonwealth's prima facie case for a charged crime is a question of law for which our standard of review is de novo and our scope of review is plenary." *Commonwealth v. Harris*, 2022 PA Super 1, 269 A.3d 534, 539 (Pa. Super. Ct. 2022), reargument denied (Mar. 14, 2022), appeal granted, 285 A.3d 883 (Pa. 2022), and aff'd, 315 A.3d 26 (Pa. 2024), citing to *Commonwealth v. Wroten*, 257 A.3d 734, 742 (Pa. Super. 2021) (citation omitted).

#### 2. Court's Analysis

Defendant appears to argue that his constitutional rights were deprived because the magisterial district judge relied solely on hearsay testimony at the preliminary hearing stage. Defendant raised this argument in a pleading titled "Motion(s)-In-Limine" which was filed on March 7, 2024. In that pro se motion in limine, Defendant challenged the pretrial finding that the Commonwealth presented evidence to establish a prima facie case.

This Court held a hearing on March 12, 2024 relating to Defendant's motion. It is well established under Pennsylvania law that the Commonwealth may present additional evidence to establish that the defendant has committed the elements of the offenses charged. *See Commonwealth v. Dantzler*, 135 A.3d 1109 (Pa.Super. 2016); *see also Comm v. Karlson*, 449 Pa. Super. 378 (1996). At the court proceeding on March 12, 2024, the Commonwealth submitted the transcript of the October 13, 2023 Omnibus Pretrial Hearing as additional proof that a prima facie case exists. *See* Motion in Limine Hr'g, 3/12/2024, Commonwealth's Ex. 7. The transcript included the testimony of Pennsylvania Office of Attorney General Narcotics Agent Joseph

9

Barna, Pennsylvania Office of Attorney General Narcotics Agent Justin Shaffer, Monroeville Police Detective Steven Maritz, City of Washington Police Officer Joseph Fichter, Washington County Drug Task Force Detective Richard Gluth, City of Washington Police Detective Dan Eberman, and City of Washington Police Sergeant Kent Mitchell. Defendant was afforded an opportunity to cross-examine each witness, through counsel, at the October 13, 2023 hearing. *See* Omnibus Pre-Trial Hr'g Tr., 47-58; 67-70; 82-86; 87-88; 116-24; 126-127; 135-139; 146-149; 158- 165, 10/13/2023. This Court denied the motion by way of Memorandum and Order dated April 1, 2024.

The reasons for the Court's April 1, 2024 Order already appear of record in said Memorandum and Order. Therefore, this Court hereby incorporates the same as its Pa.R.A.P. 1925(a) Memorandum and attaches it hereto. For the reasons set forth in the April 1, 2024 Opinion and Order, this Court respectfully submits that its order be affirmed on the merits and Defendant's appeal be dismissed.

## E. Defendant Was Denied and Precluded From Exculpatory Evidence of Impeachment During Preliminary Hearing

### 1. Standard of Review

"The evidentiary sufficiency of the Commonwealth's prima facie case for a charged crime is a question of law for which our standard of review is de novo and our scope of review is plenary." *Commonwealth v. Harris*, 2022 PA Super 1, 269 A.3d 534, 539 (Pa. Super. Ct. 2022), reargument denied (Mar. 14, 2022), appeal granted, 285 A.3d 883 (Pa. 2022), and aff'd, 315 A.3d 26 (Pa. 2024), citing to *Commonwealth v. Wroten*, 257 A.3d 734, 742 (Pa. Super. 2021) (citation omitted).

10

## 2. Court's Analysis

Defendant sets forth an entirely undeveloped legal argument, with no citation to relevant legal authority, that the Commonwealth suppressed exculpatory evidence at the preliminary hearing stage by not calling certain witnesses to testify at that hearing. Defendant argues that he was not afforded a full and fair opportunity to cross-examine certain Commonwealth witnesses because they were not called to testify at the preliminary hearing. Defendant cites to *Commonwealth v. Bazemore*, 531 Pa. 582 (1992) in support of his argument. In *Bazemore*, the Pennsylvania Supreme Court held that the transcript of prior testimony from a preliminary hearing of an unavailable Commonwealth witness was not admissible at trial where the Commonwealth failed to disclose to the defense vital impeachment evidence regarding this witness prior to the preliminary hearing. Defendant's reliance on *Bazemore* to support his claim is entirely misplaced. Defendant's assertions in this section are not reasoned and developed legal arguments supported with citations to relevant legal authority. This Court suggests that these assertions are not reviewable, and this claim is waived for lack of development.

Furthermore, as set forth in Section D above, Defendant challenged the sufficiency of the evidence presented at the preliminary hearing. The Commonwealth submitted the transcript of the October 13, 2023 Omnibus Pretrial Hearing as additional proof that a prima facie case exists. *See* Motion in Limine Hr'g, 3/12/2024, Commonwealth's Ex. 7. At the October 13, 2023 Omnibus Pretrial Hearing, the Commonwealth presented the testimony of seven (7) law enforcement officers, including Pennsylvania Office of Attorney General Narcotics Agent Joseph Barna, Pennsylvania Office of Attorney General Narcotics Agent Justin Shaffer, Monroeville Police Detective Steven Maritz, City of Washington Police Officer Joseph Fichter, Washington County Drug task Force Detective Richard Gluth, City of Washington Police

11

Detective Dan Eberman, and City of Washington Police Sergeant Kent Mitchell. Defendant was afforded an opportunity to cross-examine each witness, through counsel, at the October 13, 2023 hearing. *See* Omnibus Pre-Trial Hr'g Tr., 47-58; 67-70; 82-86; 87-88; 116-24; 126-127; 135-139; 146-149; 158- 165, 10/13/2023.

Defendant's claim lacks merit and should be dismissed.

## F. The use of hearsay statements at Preliminary Hearing relating to Confidential Informants a Direct Violation and Deprivation of Defendant's Constitutional Rights

### 1. Standard of Review

"The evidentiary sufficiency of the Commonwealth's prima facie case for a charged crime is a question of law for which our standard of review is de novo and our scope of review is plenary." *Commonwealth v. Harris*, 2022 PA Super 1, 269 A.3d 534, 539 (Pa. Super. Ct. 2022), reargument denied (Mar. 14, 2022), appeal granted, 285 A.3d 883 (Pa. 2022), and aff'd, 315 A.3d 26 (Pa. 2024), citing to *Commonwealth v. Wroten*, 257 A.3d 734, 742 (Pa. Super. 2021) (citation omitted).

### 2. Court's Analysis

Defendant next argues that it was a violation of his constitutional rights for the magisterial district judge to rely on hearsay statements, testified to by Officer Fichter, relating to confidential informants (hereinafter "C.I.") utilized by law enforcement in this case.

Defendant's argument is similar to the one set forth in Section D where he challenges the use of hearsay testimony at a preliminary hearing. Defendant initially challenged the use of hearsay at the preliminary hearing in a pleading titled "Motion(s)-In-Limine" which was filed on March 7, 2024. The Court issued a Memorandum and Order dated April 1, 2024. The reasons for the Court's April 1, 2024 Order already appear of record in said Memorandum and Order.

12

Therefore, this Court hereby incorporates the same as its Pa.R.A.P. 1925(a) Memorandum and attaches it hereto.

Defendant, in his "Direct Appeal" brief, further argues that the identity of the confidential informants should have been revealed. Defendant filed an Omnibus Pretrial Motion on July 27, 2023, which included a Motion to Reveal Confidential Informant Identity. Judge Costanzo, following the October 13, 2023 hearing, denied the motion to by way of Opinion and Order dated January 26, 2024. The reasons for the Court's January 26, 2024 Order already appear of record in said Opinion and Order. Therefore, this Court hereby incorporates the same as its Pa.R.A.P. 1925(a) Opinion and attaches it hereto.

For the reasons set forth in the Memorandum and Order dated April 1, 2024, as well as the January 26, 2024 Opinion and Order, this Court respectfully submits that its orders be affirmed on the merits and Defendant's appeal be dismissed.

### G. Evidence Tampering and Fabrication, Cocaine Chain of Custody Gaps Should Have Deemed Chain to be Deficient

#### 1. Standard of Review

The "standard of review relative to the admission of evidence is for an abuse of discretion." *Commonwealth v. Feliciano*, 2013 PA Super 117, 67 A.3d 19, 27 (Pa. Super. Ct. 2013).

#### 2. Court's Analysis

Defendant argues that gaps in the chain of custody regarding the evidence presented at trial should have been deemed to be deficient.

"While the Commonwealth bears the burden of demonstrating some reasonable connection between the proffered exhibits and the true evidence, it need not establish the sanctity of its exhibits beyond a moral certainty. The Commonwealth need not produce every individual

13

who came into contact with an item of evidence, nor must it eliminate every hypothetical possibility of tampering." *Commonwealth v. Cugnini*, 307 Pa.Super. 113 (1982) (internal citations omitted). A completed chain is "not required so long as the Commonwealth's evidence, direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibits have remained the same from the time they were first received until the time of trial. Any gaps in testimony regarding the chain of custody go to the weight to be given the testimony, not to its admissibility." *Id.*

The Commonwealth presented extensive testimony and evidence at trial demonstrating the chain of custody of the cocaine relating to the six controlled buys.

I.      March 27, 2019 Controlled Buy

On March 27, 2019, the record evidence demonstrates that law enforcement checked the C.I.'s vehicle and person. TT, vol. I, 62, 4/9/2024. Agent Jospeh Barna testified that law enforcement followed the C.I. to the controlled buy location, Garden City Plaza, and observed Defendant get out of his girlfriend's vehicle and enter into the C.I.'s vehicle. *Id.* at 59, 74. Defendant then exited the car and law enforcement followed the C.I., with constant surveillance, to a predetermined location. *Id.* at 75. The C.I. handed over what looked to be a half ounce of cocaine. *Id.* at 75-76. Agent Barna credibly testified that no one else interacted with the C.I. or went into the C.I.'s vehicle. *Id.* at 76. The substance was then taken immediately to the Monroeville Police Department. *Id.* at 81; *see also* Jury Trial, 4/9/2024, Commonwealth's Ex. 3. The cocaine was entered onto the evidence report log. *Id.* at 83-84; *see also* Jury Trial, 4/9/2024, Commonwealth's Ex. 4. The evidence seized from the controlled buy was put in an envelope and then the envelope was sealed with evidence tape that is tamperproof. *Id.* at 131-132. The

14

evidence remained sealed after it was packaged on March 27, 2019. *Id.* at 132; *see also* Jury

Trial, 4/9/2024, Commonwealth's Ex. 12.

II.     June 13, 2019 Controlled Buy

On June 13, 2024, Agent Barna searched the C.I.'s vehicle and person. *Id.* at 91-92. The

C.I. was then followed to the parking lot and was continued to be surveilled. *Id.* at 97.

Defendant arrived at the Speedway gas station in Monroeville. *Id.* at 101. He got into the C.I.'s

vehicle for less than a minute, exited, and then drove away. *Id.* The record evidence

demonstrates that the C.I. was then followed to a predetermined location where the C.I. was

searched and provided the controlled substance to law enforcement. *Id.* at 103. Agent Barna

testified that no one else interacted with the C.I. or went into the C.I.'s vehicle. *Id.* at 111-112.

The substance was then taken back to Monroeville Police Department. *Id.* at 105; *see also* Jury

Trial, 4/9/2024, Commonwealth's Ex. 7. The controlled substance was placed in a sealed

envelope and entered into evidence that day. *Id.* at 108, 133; *see also* Jury Trial, 4/9/2024,

Commonwealth's Ex. 13.

III.     July 17, 2019 Controlled Buy

On July 17, 2019, a controlled buy took place at the Exxon near the zoo in Allegheny

County. *Id.* at 115-116. The detectives searched the C.I.'s person and vehicle. *Id.* at 113-114.

The detectives then followed the C.I. to the location. *Id.* at 118. The C.I. did not interact with

anyone else besides Defendant. *Id.* at 122-123. The controlled buy occurred and the C.I.

returned to a predetermined location. *Id.* at 123. The suspected cocaine was collected by law

enforcement, placed in a sealed evidence envelope and entered into evidence with the

Monroeville Police Department on the same day. *Id.* at 125, 134-135; *see also* Jury Trial,

4/9/2024, Commonwealth's Ex. 10 and 14.

## IV.     Evidence Maintained at Monroeville Police Department

Detective Robert Renk testified that the evidence from the March 27, 2019, June 13, 2019 and July 17, 2019 controlled buys were sealed in envelopes with tamperproof evidence tape. *Id.* at 278. Detective Renk further testified that evidence maintained at the Monroeville Police Department was placed in a "slam locker," which locks after it is shut. *Id.* at 277. The slam locker can only be opened by the evidence custodian from inside the evidence room. *Id.* Once closed, the slam locker cannot be opened from the outside. *Id.* The evidence remains in the evidence room until it is signed out. *Id.* at 275-276.

## V.     Evidence Transferred to Washington County District Attorney Drug Task Force Office

Agent Barna testified that, on February 4, 2021, he signed the three items of evidence out of the Monroeville Police Department evidence room. *Id.* at 87. Agent Barna drove the evidence down to Washington County where he immediately signed and completed a form transferring the evidence over to Detective Fichter. *Id.* at 88. Detective Fichter also signed the form. *Id.*; *see also* Jury Trial, 4/9/2024, Commonwealth's Ex. 11.

Detective' Fichter testified that, on February 4, 2021, Agent Barna brought the evidence from the March 27, 2019, June 13, 2019 and July 17, 2019 controlled buys to the Washington County Drug Task Force office where Detective Fichter then took custody of it. TT, vol. II, 472, 4/10/2024. After taking custody of the evidence, Detective Fichter placed evidence tags on the items and then he placed the evidence in the temporary holding locker. *Id.* Detective Fichter explained that there is a log that has to been completed when evidence is placed in the temporary holding locker. *Id.* at 466. He explained that a very rudimentary log is utilized which includes the incident number, the officer's name, and a short description of the evidence that is being placed in the temporary locker. *Id.* at 467. Detective Fichter testified that the evidence received

16

from Agent Barna was placed in the temporary locker and logged onto a log sheet to denote that he received three evidence bags relating to Jason Woodall's case from the Attorney General's Office. *Id.* at 468; *see also* Jury Trial, 4/10/2024, Commonwealth's Ex. 25. Since there was no incident, it was placed into the temporary locker on the same day and time that Agent Barna dropped it off. *Id.* at 472.

Detective Richard Gluth, director of the Washington County District Attorney Drug Task Force, testified at trial. TT, vol. III, 681-747, 4/11/2024. Part of Detective Gluth's duties include serving as an evidence custodian. *Id.* at 682. Generally, Detective Gluth either directly signs the packaged item into evidence or at his next available opportunity, withdraws the evidence from the receiving locker. *Id.* He examines it, corrects any mistakes made on it, and ensures its packaged properly and labeled properly. *Id.* at 682-683. He then completes an evidence log, which lists the items of evidence and some basic information on the evidence log. *Id.* at 683. Detective Gluth then enters the evidence into the BEAST, a state computer system used to log evidence for laboratory analysis. *Id.* After pre-log is completed, Detective Gluth signs it into evidence with the date and places it into their evidence room. *Id.*

The evidence received by the Washington County Drug Task Force, from Agent Barna on February 4, 2021, was assigned another label with Washington County's incident number. *Id.* at 684; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 37. The evidence stayed in the temporary secured locker from February 4, 2021 to February 12, 2021. *Id.* at 689-690. Detective Gluth entered all three items into evidence on February 12, 2021. *Id.* Once entered into evidence, Gluth placed the evidence in a box with the completed lab submission reports for purposes of transferring the evidence to the crime lab for testing. *Id.* at 692; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 38 and 39.

17

VI.     Evidence Submitted Crime Laboratory

Detective Gluth testified that he signed out the evidence from the March 27, 2019, June 13, 2019 and July 17, 2019 controlled buys and transported the items to the Greensburg Regional Laboratory (also known as the Pennsylvania State Police Crime Laboratory) on February 17, 2021. *Id.* at 698; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 40.

VII.     Evidence Tested at Crime Laboratory

Sara Lundolh testified at trial. TT, vol. II, 556, 4/10/2024. She is a forensic scientist who specializes in drug identification. *Id.* Lundolh was employed by the Pennsylvania State Police in 2021. *Id.* Lundolh testified, while working at the Pennsylvania State Police Crime Laboratory, that she received evidence envelopes relating to the March 27, 2019, June 13, 2019 and July 17, 2019 controlled buys. *Id.* at 559-560. Lundolh performed testing on each item of evidence. *Id.* Each of the three items tested was identified as cocaine. *Id.* at 562, 565, 567. Lundolh testified that when she concluded her testing on all three items of evidence, she sealed the envelopes at the bottom, using blue tape. *Id.* at 567-568. Lundol, who inspected the envelopes at trial, testified that envelopes remained in the same sealed condition at trial as when they were sent back to the Washington County Drug Task Force. *Id.*

VIII.     Evidence Returned to Washington County Drug Task Force

On April 13, 2021, Detective Gluth obtained the evidence from the laboratory, transported it back to the Washington County Drug Task Force office and signed it back into evidence. *Id.* at 699.

IX.     Evidence Presented at Trial

18

Detective Gluth testified that on April 9, 2024, he signed out the evidence and transported the items to the courtroom for the jury trial. *Id*. at 699, 717, 727; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 40.

### X. August 31, 2019 Controlled Buy

On August 31, 2019, the C.I. was searched by Detective Fichter. TT, vol. II, 412, 4/10/2024. The C.I. stayed within view of the detectives at all times. *Id*. Defendant showed up to the residence and the C.I. got into Defendant's vehicle. *Id*. at 414. The detectives observed a hand-to-hand exchange. *Id*. at 416. The C.I. then exited the vehicle and Defendant left. *Id*. Detective Fichter testified that the narcotics were secured from the C.I. *Id*. The controlled substances were returned to the District Attorney's Drug Task Force Office to process the evidence. *Id*. at 417. The evidence was put in a plastic bag and sealed with evidence tape and secured into a temporary evidence locker. *Id*. at 418. Detective Fichter testified that the temporary locker is a locker with a padlock that only the supervisor, Chief Gluth, has access to. *Id*. Chief Gluth is responsible for placing evidence into the main evidence room. *Id*. at 418-419; *see also* Jury Trial, 4/10/2024, Commonwealth's Ex. 16 and 18. Detective Fichter explained that there is a log that has to been completed when evidence is placed in the temporary holding locker. TT, vol. II, 460, 4/10/2024. He explained that a very rudimentary log is utilized which includes the incident number, the officer name, and a short description of the evidence that is being placed in the temporary locker. *Id*.; *see also* Jury Trial, 4/10/2024, Commonwealth's Ex. 25.

On September 3, 2019, Detective Gluth entered the cocaine into evidence. TT, vol. III, 712, 4/11/2024; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 45. The evidence was signed out by Gluth and transported to the crime laboratory on September 24, 2019. *Id*. at 714.

19

On January 29, 2020, Gluth retrieved the evidence from the crime laboratory after it was tested and signed it back into evidence at the Washington County Drug Task Force office. *Id.* at 717; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 48. On April 9, 2024, Detective Gluth signed the evidence and transported it to the courthouse for the jury trial. *Id.*

XI.     September 18, 2019 Controlled Buy

On September 18, 2019, Detective Fichter testified that the C.I.'s person and vehicle was searched. TT, vol. II, 432, 4/10/2024. The team set up surveillance of the location of the buy. *Id.* at 433. The C.I. stepped out of his vehicle when Defendant arrived. Id. at 434. Defendant opened the C.I.'s passenger door, placed something in the vehicle and then a hand-to-hand interaction was observed between the C.I. and Defendant. *Id.* At no point did the C.I. leave Detective Fichter's sight. *Id.* at 434-435. Detective Fichter was able to positively identify Defendant. *Id.* at 437. After Defendant left the area, Detective Fichter search the C.I.'s vehicle and recovered cocaine that was placed in the center console by Defendant. *Id.* at 440. The cocaine was brought back to the Washington County Drug Task Force Office, packaged in an evidence envelope and placed in the temporary locker. *Id.* at 440-441; *see also* Jury Trial, 4/10/2024, Commonwealth's Ex. 19, 20, and 25.

On September 22, 2019, Detective Gluth entered the cocaine into evidence. TT, vol. III, 720, 4/11/2024; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 49. The evidence was signed out by Gluth and transported to the crime laboratory for testing on September 24, 2019. *Id.* at 721-722; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 51. On January 29, 2020, Gluth retrieved the evidence from the crime laboratory after it was tested and signed it back into evidence at the Washington County Drug Task Force Office. *Id.* at 722; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 49. On April 9, 2024, Detective Gluth signed the evidence and

20

transported it to the courthouse for the jury trial. *Id.*; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 52.

XII.    September 23, 2019 Controlled Buy

On September 23, 2019, law enforcement searched the C.I. TT, vol. II, 449, 4/10/2024. Surveillance was set up of the GetGo in Washington County. *Id.* at 451. The C.I. was followed by law enforcement to the location. *Id.* Once Defendant arrived, the C.I. got into Defendant's vehicle. *Id.* There was an exchange then both individuals got out of Defendant's vehicle. *Id.* at 452. The C.I. was followed by law enforcement to a predetermined location where Detective Fichter obtained cocaine which the C.I. had purchased from Defendant. *Id.* at 454. The evidence was then packaged and placed into the lockers that could not be re-accessed. *Id.* at 459-460; *see also* Jury Trial, 4/10/2024, Commonwealth's Ex. 22, 23, 24, and 45.

On September 26, 2019, Detective Gluth removed the cocaine from the temporary evidence locker and entered the item into evidence. TT, vol. III, 724, 4/11/2024; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 53. The evidence was signed out by Gluth and transported to the crime laboratory for testing on October 28, 2019. *Id.* at 726; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 55. On January 29, 2020, Gluth retrieved the evidence from the crime laboratory after it was tested and signed it back into evidence at the Washington County Drug Task Force Office. *Id.* at 727; *see also* Jury Trial, 4/11/2024, Commonwealth's Ex. 56. On April 9, 2024, Detective Gluth signed the evidence and transported it to the courthouse for the jury trial. *Id.* at 727; *see also* Jury Trial, 4/11/2024, Commonwealth's 56.

Evidence Received by Crime Laboratory

Casey Castle, a lab technician for the Pennsylvania State Police Crime Lab, received and tested the evidence relating to the August 31, 2019, September 18, 2019 and September 23, 2019

21

controlled buys. TT, vol. III, 540-541, 4/11/2024; *see also* Jury Trial, 4/11/2024,

Commonwealth's Exhibit 18, 20, 24. Castle testified that the evidence received by the crime

laboratory which she tested was submitted by Detective Gluth. *Id.* at 541. Castle explained that

one of the first things she does when she receives evidence is to look to make sure that there is a

seal with the proper signature. *Id.* Typically, the laboratory technicians check the case

information to make sure that it is consistent with the request form that they received. *Id.* In this

case, all three exhibits that she tested were sealed with the red tamperproof tape. *Id.* Castle

testified that she would have noted if there was any improper seal or problems with packaging.

*Id.* at 542. Castle further testified that the evidence envelopes showed no signed that they had

been tempered with. *Id.*

Castle explained that when evidence is received by the Pennsylvania State Police Crime

Laboratory, it is assigned a lab number set forth on a yellow label and has Bureau of Forensic

Service tape used to seal the bottom of the envelope which bears Castle's signature, along with

the date and time. *Id.* at 543-544.

Castle opened the sealed evidence envelopes while on the witness stand relating to the

August 31, 2019, September 18, 2019 and September 23, 2019 controlled buys. *Id.* at 544, 551,

553; *see also* Jury Trial, 4/11/2024, Commonwealth's Exhibit 18, 20, and 24. She testified that

she conducted testing on the items inside the envelopes. *Id.* The items in the three evidence

envelopes were all found to be cocaine. *Id.* at 545, 552, 554; *see also* Jury Trial, 4/11/2024,

Commonwealth's Ex. 27, 28, and 29. Ms. Castle personally re-seals the envelopes after testing.

*Id.* at 555. Afterwards, the envelope goes back to the evidence technician who places it in a

secure vault where it awaits pick up from the submitting agency. *Id.* The envelopes were in the

same condition as when Castle sent them back to the Washington County Drug Task Force. *Id.* at 551, 553, 561.

The Commonwealth's extensive evidence presented at trial, as set forth in detail above, establishes a reasonable inference that the identity and condition of the cocaine remained the same from the time it was first received until the time of trial.

Defendant argues that the Commonwealth's witnesses, specifically law enforcement officers involved in the investigation, are not credible witnesses and evidence, such as the control logs, are not authentic. It is well established under Pennsylvania law that "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses." *Commonwealth v. Fuentes*, 2022 PA Super 43, 272 A.3d 511, 516 (Pa. Super. Ct. 2022); *see also Commonwealth v. Ghrist*, 873 WDA 2015, 2016 WL 5173526, at 6 (Pa. Super. Ct. July 13, 2016).

Defendant sets forth in his Concise Statement a broad assertion that documents presented by the Commonwealth at trial relating to chain of custody were fabricated and fraudulent. This Court finds the statement wholly inadequate to state a challenge to the evidence presented at trial. Defendant has failed to develop meaningful argument with specific reference to the record to support his claim on appeal that the evidence presented at trial regarding evidence control logs were fabricated or fraudulent. It is suggested that Defendant therefore has waived review of the claims.

23

## H. Rule 600, 180 Days of Pretrial Confinement

### 1. Standard of Review

"In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004) (internal citations omitted).

### 2. Court's Analysis

Defendant argues that he was "deprived of Rule 600(B), (D)(2) & (E) after 180 days of pretrial confinement." *See* Defendant's Concise Statement, 7/22/2024.

Defendant filed a pro se "Motion Pursuant to Rule 600(B), (D)(2) and (E)" on February 23, 2024 and presented the Motion to this Court on March 5, 2024. This Court held an evidentiary hearing on March 12, 2024 for the limited purpose of determining whether Defendant is entitled to immediate release on nominal bail pursuant to Rule 600(B), (D)(2) and (E). *See* Rule 600 Nominal Bail Hr'g Tr., 3/12/2024. Defendant's motion was denied by way of Opinion and Order dated March 14, 2024.

The reasons for the Court's March 14, 2024 Order already appear of record in said Opinion and Order. Therefore, this Court hereby incorporates the same as its Pa.R.A.P. 1925(a) Opinion and attaches it hereto. For the reasons set forth in the March 14, 2024 Opinion and Order, this Court respectfully submits that its order be affirmed on the merits and Defendant's appeal be dismissed.

## I. Unconstitutionally Denied Bail

Defendant argues that he was illegally deprived an opportunity to post bail and Judge Valerie Costanzo blatantly failed to state on the record why she denied Defendant an opportunity at bail pursuant to Pa. R. Crim. P. 521(c).

24

The record demonstrates that Defendant's bail was initially denied by Magisterial District Judge Joshua Kanalis on April 14, 2023. The magisterial district judge did not set bail on the basis that two (2) detectives had made ten (10) attempts to arrest Defendant at his residence and Defendant was never present. *See Commonwealth v Woodall*, MJ-27101-CR-0000114-2021, Criminal Docket. Defendant filed a Motion to Set Bail on May 16, 2023 and an evidentiary hearing was held on June 20, 2023 before Judge Valarie Costanzo. Defendant, Agent Barna, and Detective Fichter testified at the hearing. *See* Defendant's Motion to Set Bail Hr'g Tr., 6/20/2023. The Commonwealth, based on the evidence presented at the hearing, set forth a detailed argument to the Court why Defendant may be a flight risk. Judge Costanzo agreed with the Commonwealth's argument by denying Defendant's Motion to Set Bail, after the evidentiary hearing, by order entered on June 22, 2023.

Defendant filed an Omnibus Pretrial Motion on July 27, 2023, which included a Motion to Set Bail. Judge Costanzo, following the October 13, 2023 hearing, denied Defendant's Motion To Set Bail in her January 26, 2024 Opinion, stating, "the record is entirely devoid of any evidence that was presented by Defendant at the hearing on his Omnibus Pretrial Motion that indicates any change in circumstances following the denial of Defendant's initial motion to set bail that would now entitle Defendant to a bail amount." *See* Opinion and Order, 16, 1/26/2024.

Defendant, in support of his argument, cites to Pa.R.Crim.P. 521(c), which relates to bail after a finding of guilt. Defendant does not cite to any legal authority setting forth that Defendant's conviction should be overturned if it is determined that Judge Costanzo, in her June 22, 2023 Order, did not adequately specify the reasons for denying bail. Defendant's "Direct Appeal" brief cites to irrelevant caselaw that does not support his argument to overturn the conviction in this case.

25

The Pennsylvania Supreme Court has clearly stated that even if bail was improperly set prior to trial, there is no prophylactic rule that a new trial is required. *See Commonwealth v Floyd*, 494 Pa. 537 (1981).

The reasons for the Court's January 26, 2024 Order already appear of record in said Opinion and Order. Therefore, this Court hereby incorporates the same as part of its Pa.R.A.P. 1925(a) Opinion. For the reasons set forth above, this Court submits that Defendant's claim should be dismissed.

## J. Defendant precluded from entering evidence for trial purposes to show motive of law enforcement wanting to suggestively target Defendant

### 1. Standard of Review

"In reviewing a trial court's ruling on the admissibility of evidence, [the] standard of review is one of deference. Commonwealth v. Thompson, 2014 PA Super 273, 106 A.3d 742 (Pa. Super. Ct. 2014). Questions concerning the admissibility of evidence are within "the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." Id.

### 2. Court's Analysis

Defendant next argues the Court erred in sustaining the Commonwealth's objection, thereby precluding him from offering evidence that Defendant argues showed motive of law enforcement wanting to suggestively target Defendant.

Defendant sought a pretrial ruling regarding Commonwealth's objections relating to several document that Defendant wanted to present at trial. *See* Pretrial Conference Hr'g Tr., 22, ln. 13-21; 33, ln. 11-18, 4/8/2024. Defendant set forth that he intended to establish at trial that law enforcement, in filing the charges in the instant case, had done so as a form of retaliation. Defendant explained that he could establish retaliation through several documents which he

26

wanted to present at trial and have admitted into evidence. *Id.* at 17. Defendant asserted that the exhibits he sought to use at trial were self-authenticating documents. Defendant further stated that he did not intend on calling any witnesses to testify at trial to authenticate the documents or further develop his claim regarding retaliation. *Id.* at 21.

The Commonwealth did not stipulate to the issue of authentication. "Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901.

The Court, in an attempt to fully develop the record, reviewed each exhibit in detail with the parties and ruled on objections made by the Commonwealth. *Id.* at 25 -54.

Defendant sought to use at trial a copy of a document titled Initial Complaint. Defendant explained that the document is a copy of a civil complaint dated September 13, 2018 which he filed against Monroeville Police Officer Louis Curio and Pennsylvania Office of Attorney General Agent Kuneo. *Id.* at 25; *see also* Defendant's Omnibus Pretrial Motion Briefing, 3/7/2024, Exhibit I. Defendant acknowledged that Officer Curio and Agent Kuneo were not directly related to the present case. *Id.* at 20, ln. 11-14. The Commonwealth objected to the document being presented at trial and argued the document was irrelevant since it did not relate to the present case and the officers referenced in the civil complaint were not testifying at trial. The Commonwealth further argued that the document would be confusing to the jury. *Id.* at 26.

The Court sustained the Commonwealth's objection, ruling that the exhibit was irrelevant to the present case and would be highly confusing to the jury. *Id.* at 34. Upon review of the

record, the Court is satisfied with its decision to sustain, and explanation for sustaining, the Commonwealth's relevance objection.[7]

Defendant sought to introduce into evidence a Monroeville Police Department Investigation report regarding a fraud investigation. *Id.* at 32, ln. 21-25; *see also* Defendant's Omnibus Pretrial Motion Briefing, 3/7/2024, Defendant's Ex. B. The Commonwealth objected to the document on grounds of relevance and argued the document would be confusing to the jury. "Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015). Pursuant to Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Moreover, "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Tyson*, 119 A.3d at 358. However, "[t]he court may exclude relevant evidence it its probative value is outweighed by the danger of...unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule of Evidence 403. This Court sustained the Commonwealth's relevance objection as the Monroeville Police Department Investigation report was entirely unrelated to the present case.

Defendant sought to introduce into evidence copies of emails between third parties not testifying at trial. Pretrial Conference Hr'g Tr. at 31, ln. 3-11; 44-47; 53-54; *see also* Pretrial Conference, 4/8/2024, Ex. C(B). Defendant advised the Court that he did not intend on presenting any witnesses to testify regarding the email communications. *Id.* at 45, ln. 4-13.

---

[7] Defendant also sought to introduce into evidence a copy of a receipt from Monroeville Messenger Service to establish that the civil complaint had been notarized. *Id.* at 30, ln. 3-24. The Court sustained the Commonwealth's objection, ruling that the exhibit was irrelevant to the present case and would be confusing to the jury. *Id.* at 39-40.

28

Defendant argued that the emails were self-authenticating. The Commonwealth lodged a relevance objection, and also objected to lack of authentication. *Id.* at 44, ln. 16-23. The Court sustained the Commonwealth's objection and precluded Defendant from entering the documents into evidence at trial without presenting a witness to lay a proper foundation and adequately authenticate the documents, in accordance with Rule 901. *See Commonwealth v. Koch*, 2011 PA Super 201, 39 A.3d 996, 1002 (Pa. Super. Ct. 2011) ("Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient.") The email communications Defendant sought to have admitted are not self-authenticating documents. Pa.R.E. 902. "Authentication [of a document] is a prerequisite to admissibility." *Koch* at 1005. The email communication contained hearsay statements by third parties who were not testifying at trial. Furthermore, the email communications were irrelevant as they did not relate to the issue of guilt or innocence regarding the present case. Upon review of the record, the Court is satisfied with its decision to sustain, and explanation for sustaining, the Commonwealth's objection on grounds of authentication and relevance. Pretrial Conference Hr'g Tr., 46, ln. 6-19, 4/8/2024.

Defendant sought to introduce into evidence a copy of a civil docket sheet regarding a federal civil action filed in the United States District Court, Western District of Pennsylvania at Docket No. 2:23-CV-01370-LPL. *Id.* at 29, ln. 16-22; 36, ln. 9-11; *see also* Defendant's Omnibus Pretrial Motion Briefing, 3/7/2024, Exhibit D. The docket sheet relates to a civil action filed by Defendant under 42 U.S.C. § 1983 in which Officer Steven Moritz is a named defendant. The Commonwealth objected to the presentation of the exhibit on relevance grounds and argued that the document would confuse the issues that the jury was responsible for deciding. *Id.* at 36, ln. 9-15. The Commonwealth further explained that Officer Moritz would not be called to testify

29

at trial as he is active military and was deployed on a ship. *Id.* at 37. Defendant argued that the document related to Officer Moritz's credibility. *Id.* The Court agreed with Defendant that the document may be relevant if Officer Moritz testified at trial. *Id.* at 37-38, ln. 38-3. The Court withheld making a pretrial ruling regarding the Commonwealth's objections to the admissibility of the civil docket sheet. *Id.*

Defendant sought to introduce into evidence a copy of a Common Pleas of Allegheny County Docket Sheet for Docket No. 8529-2019. *Id.* at 40, ln. 4-5. Defendant asserted that this document was relevant as it related to the credibility of Washington County Assistant District Attorney Rachel Wheeler (hereinafter "ADA Wheeler") and the credibility of the Commonwealth's witnesses who, at a prior bail hearing, argued that Defendant was a flight risk. *Id.* at 40, ln. 19-25; *see also* Defendant's Motion to Set Bail Hr'g Tr., 6/20/2023. Defendant further argued that this document would establish that Defendant was not a flight risk. The Commonwealth objected to the presentation of the exhibit on relevance grounds and argued that the document would confuse the issues that the jury was responsible for deciding. *Id.* at 40, ln. 11-18. "Admission of evidence ... rests within the sound discretion of the trial court, which must balance evidentiary value against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury." *Commonwealth v. Brown*, 212 A.3d 1076 (Pa.Super. 2019), quoting *Commonwealth v. Bryant*, 620 Pa. 218 (2013); *see also* Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.") The trial court's ability must be trusted "to oversee the presentation of evidence 'so that overtly passionate, intentionally biased and inflammatory material is kept out of the courtroom.'" *Brown*, 212 A.3d

30

at 1086 (internal citations omitted). An appellant bears the "heavy burden" to demonstrate the trial court abused its discretion on an evidentiary ruling. *Id.* The Court sustained the Commonwealth's objection, ruling that the exhibit was irrelevant as it was not related to the issue of guilt or innocence in the present case and would be highly confusing to the jury. *Id.* at 44, ln. 9-15.

### K. Defendant Precluded From Questioning Officer Fichter Regarding Arrest Warrant Service Log.

Defendant next argues that the court erred in sustaining the Commonwealth's relevance objection and precluding him from questioning Officer Fichter regarding a document relating to service of the arrest warrant.

"Admission of evidence ... rests within the sound discretion of the trial court, which must balance evidentiary value against the potential dangers of unfairly prejudicing the accused, inflaming the passions of the jury, or confusing the jury." *Commonwealth v. Brown*, 212 A.3d 1076 (Pa.Super. 2019), quoting *Commonwealth v. Bryant*, 620 Pa. 218 (2013); *see also* Pa.R.E. 403, ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.") The trial court's ability must be trusted "to oversee the presentation of evidence 'so that overtly passionate, intentionally biased and inflammatory material is kept out of the courtroom.'" *Brown*, 212 A.3d at 1086 (internal citations omitted). An appellant bears the "heavy burden" to demonstrate the trial court abused its discretion on an evidentiary ruling. *Id.*

This Court recognizes that "the scope of cross-examination falls within a trial court's authority, and the trial court's rulings thereon will not be reversed in the absence of a clear and manifest abuse of discretion." *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75, 96 (Pa.

31

2004). The trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Commonwealth v. Rosser*, 135 A.3d 1077 (Pa.Super. 2016), quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).

In the present case, Defendant filed an Omnibus Pretrial Motion which included a Motion to Dismiss Pursuant to Pa.R.Crim. Rule 600 (Lack of Due Diligence) on July 27, 2023. The Court held a hearing on October 13, 2023 in which Officer Fichter testified regarding attempts to serve the warrant. *See* Omnibus Pre-Trial Hr'g Tr., 129-130, 10/13/2024. The arrest warrant was entered into evidence at the hearing. Omnibus Pretrial Hr'g Tr., 107, 10/13/2023; *see also* Omnibus Pretrial Hr'g, 10/13/2023, Commonwealth's Ex. 3. Officer Fichter documented attempts to serve the warrant by writing the list of dates on the inside of his case file. Omnibus Pretrial Hr'g Tr., 108-109, 10/13/2023. Defendant references this list of attempts to serve the warrant as an arrest warrant service log. TT, vol. I, 232, 4/9/24.

Defendant, at trial, sought to impeach Officer Fichter with a copy of the arrest warrant service log. TT, vol. II, 504-505, 4/10/2024. The arrest warrant serve log had not been presented by the Commonwealth during trial or admitted into evidence. *Id.* Furthermore, Officer Fichter did not testify to any issue relating to the service of the arrest warrant or arrest warrant serve log during direct examination. *Id.* at 386-474.

This Court precluded the line of questioning in response to an objection raised by the Commonwealth. *Id.* at 505. Defendant's line of questioning was precluded based on concerns that it would confuse the issues for the jury. The line of questioning was also irrelevant to the issue of guilt or innocence.

32

For the reasons set forth above, this Court submits that it was not error to limit Defendant's cross-examination regarding the arrest warrant service log.

**L.  Defendant Not Informed On The Record of Right to File Interlocutory Appeal**

Defendant argues that it is a direct violation of his right to Due Process that he was not informed by Judge Costanzo, in her January 26, 2024 Opinion and Order in which Defendant's Omnibus Pretrial Motion was denied in its entirety, of his right to file an interlocutory appeal. Defendant argument is not developed and supported with citations to legal authority. Furthermore, the Court notes that Defendant was represented by attorney Adam Yarussi, Esquire when the January 26, 2024 Opinion and Order was entered by Judge Costanzo. Attorney Yarussi withdrew from the case on February 22, 2024. *See* Court Order, 2/22/24.

This Court submits that Defendant's claim under Section L is meritless and is waived for lack of development.

**M.  Judge Costanzo Errored by Granting Commonwealth Motion to Amend Criminal Complaint.**

**1.  Standard of Review**

"We review a trial court's decision to grant or deny a motion to amend an information for an abuse of discretion." *Commonwealth v. Sandoval*, 2021 PA Super 242, 266 A.3d 1098, 1101 (Pa. Super. Ct. 2021) (internal citations omitted).

**2.  Court's Analysis**

Defendant argues that Judge Costanzo errored by granting the Commonwealth's Motion to Amend Criminal Complaint. The Court first notes that, after a thorough review of the record, no Motion to Amend Criminal Complaint was filed in the instant case. The Commonwealth filed a Motion to Amend Criminal Information where it set forth in its motion that it did so to clear up

33

any confusion of the dates. *See* Commonwealth's Motion to Amend Crim. Info., 12/20/2023.

Defendant further contends that his prior counsel, Adam Yarussi, Esquire, did not consent to an "amended criminal complaint." The record clearly demonstrates that Defendant, through counsel, consented to the December 20, 2023 Order of Court amending the criminal information. *See* Court Order, 12/20/2023. The Amended Information was filed on December 20, 2023. This Court submits that Defendant has waived this argument for the reasons set forth above.

Defendant appears to attempt to raise a statute of limitation argument relating to the filing of the original criminal complaint.[8] Defendant, through counsel, filed an extensive Omnibus Pre-Trial Motion on July 27, 2023. Defendant did not include a Motion to Dismiss Pursuant to 42 Pa.C.S. §5552(a) in his Omnibus Pretrial Motion. A hearing regarding Defendant's Omnibus Pretrial Motion was held before Judge Costanzo on October 13, 2023. Subsequent to the hearing, Defendant's counsel attempted to raise a statute of limitations argument in his brief filed on December 1, 2023. In Judge Costanzo's January 26, 2024 Opinion, the argument was acknowledged but denied as waived since Defendant did not follow Rule 578 of the Pennsylvania Rules of Criminal Procedure. The reasons for the Court's January 26, 2024 Order already appear of record in said Opinion and Order. Therefore, this Court hereby incorporates the same as its Pa.R.A.P. 1925(a) Opinion and attaches it hereto.

### N.    Pa.R.Crim.P. 517(A)

Defendant next argues that he was not timely transported from Mercer County to Washington County in accordance with Rule 517(A) of the Pennsylvania Rules of Criminal Procedure 517 in violation of his well-established constitutional rights.

---

[8] Defendant did not request for a bill of particulars. Pa.R.Crim.P. 572. "A bill of particulars is intended to give notice to the accused of the offenses charged in the indictment so that he may prepare a defense, avoid a surprise, or intelligently raise pleas of double jeopardy and the statute of limitations." *Commonwealth v. Champney*, 574 Pa. 435, 451, 832 A.2d 403, 412 (2003) (internal citations omitted).

34

Pa.R.Crim.P. 517(A) sets forth that "[w]hen a defendant has been arrested in a court case, with a warrant, outside the judicial district where the warrant of arrest was issued, the defendant shall be taken without unnecessary delay to the proper issuing authority in the judicial district of arrest for the purpose of posting bail, as permitted by law."

Defendant did not cite correctly to Pa.R.Crim.P. 517(D), which sets forth that "[w]hen a defendant has been held for 48 hours or more without preliminary arraignment, in a place of detention outside the judicial district where the warrant was issued, because of the inability to post bail, the defendant shall be discharged from custody *upon application of any interested person to a judge of a court of the judicial district of detention*; provided that, upon cause shown the judge may grant one or more extensions of the defendant's detention to an early date, fixed in the order, but if the defendant remains in custody and has not been removed to the judicial district where the warrant was issued at the end of the extended detention period, the defendant shall be discharged from custody." (emphasis added).

Defendant contends that he was arrested on April 8, 2023 in Lawrence County regarding outstanding Mercer County and Washington County arrest warrants. Defendant was transported from the Lawrence County jail to the Mercer County jail. The Mercer County arrest warrant was addressed by Magistrate Travis Martwinski on April 11, 2023 and Defendant was granted an unsecured bail in the amount of $2,500. Defendant asserts that, instead of adhering to Pa.R.Crim.P. 517(A), Washington County requested Mercer County Magistrate Daniel Davis to hold a bail hearing and place a $50,000 bond on Defendant. Defendant further argues that that "on April 13, 2023 at approximately 5:00-6:00p.m. without first requesting an extension of the 48 hours dictates of Pa.R.Crim.P. 517(A), which is well past the 48 hours dictates of above Rule." *See* Defendant's 1925(b) Concise Statement, Section N. Defendant does assert in his

35

concise statement, and the record is devoid of any evidence to establish that Defendant followed the requirements of Pa.R.Crim.P. 517(D) and sought to be discharged from custody by making application to the appropriate Mercer County judge. Furthermore, Defendant fails to establish in any manner how the proper procedures were not followed regarding Chapter 91 of the Judicial Code which provides for the arrest and detention of persons wanted in other counties.

Defendant's legal argument is wholly undeveloped. It contains no citations to legal authorities other than referencing Pa.R.Crim.P. 517(A), and therefore no attempt to apply any authorities to the present case. *See* Pa.R.A.P. 2119(b). This Court submits that Defendant's claim lacks merit and should be dismissed.

### O. Defendant Transported Without Lawful Transport Order

Defendant argues that he was transported from Mercer County to Washington County without a lawful transportation order. This issue was raised in Defendant's pro se "Motion(s)-In-Limine" filed on March 7, 2024. The Court entered an Opinion and Order on April 1, 2024. The reasons for this Court's April 1, 2024 Opinion already appear of record in said Opinion and Order. Therefore, this Court hereby incorporates the same as its Pa.R.A.P. 1925(a) Opinion.

### P. Officers' Names Included in Jury Instructions in Violation of Defendant's Constitutional Rights

#### 1. Standard of Review

"The nature of a court's instructions to the jury is 'within the discretion of the court, so long as the court accurately instructs the jury on the appropriate legal principles involved.' This Court's main concern is 'that the charge clearly, adequately, and accurately presents the law to the jury for its consideration.' The jury charge must be reviewed 'not in isolated portions but as a whole to ascertain whether it fairly conveys the required legal principles at issue.'" *Commonwealth v. Willis*, 990 A.2d 773, 776 (Pa. Super. Ct. 2010) (internal citations omitted).

36

## 2. Court's Analysis

Defendant next argues that the Court's written jury instruction which included witnesses' names – taken *verbatim* from the Pennsylvania Suggested Standard Criminal Jury Instructions – violated his well-established constitutional rights.

The Court, in preparing its jury instructions, utilized Section 4.07A, Identification Testimony, of the Pennsylvania Suggested Standard Criminal Jury Instructions and instructed the jury as follows:

**In their testimony, Joseph Barna, Justin Shaffer, Robert Renk, John Pioth, Mathew White, William Krut, Joseph Fichter, Dan Eberman, and Kent Mitchell has identified the defendant.**

In evaluating their testimony, you should consider the following factors in addition to the other instructions I will have provided to you for judging the testimony of witnesses:

Did the witness have a good opportunity and enough time to observe the perpetrator of the offense?

Was there enough lighting for them to make their observations?

Were they close enough to the individual to note his facial and other physical characteristics, as well as any clothing he was wearing?

Was their identification positive or was it qualified by any hedging or inconsistencies?

How attentive was the witness during the incident?

If you consider the witness's level of certainty in making the identification, you should recognize that the level of certainty can change between the time of the initial identification and the later identification in court. Consider if the level of certainty was recorded by the police at the time of the initial identification, and if that differs from the level of certainty in the later identification in court. You may

37

consider any reasons for any change in the witness's level of certainty between the initial identification and the later identification in court.

If the police failed to record the initial level of certainty, you may consider any reason given by the police for their failure to record the witness's level of certainty at the time of the initial identification.

Consider also any other evidence on the issue of the level of certainty of the in-court identification.

Please consider that a victim or another witness can sometimes make a mistake when trying to identify the criminal. If certain factors are present, the accuracy of identification testimony is so doubtful that you must receive it with caution.

Identification testimony must be received with caution:

a. if the witness because of bad position, poor lighting, or other reasons did not have a good opportunity to observe the criminal

b. if the witness's positive testimony as to identity is weakened by qualifications, hedging, or inconsistencies in the rest of their testimony.

**You should consider all evidence relevant to the question of who committed the crime, including the testimony of Joseph Barna, Justin Shaffer, Robert Renk, John Pioth, Mathew White, William Krut, Joseph Fichter, Dan Eberman, and Kent Mitchell, and any evidence of facts and circumstances from which identity, or non-identity, of the criminal may be inferred.**

You cannot find the defendant guilty unless you are satisfied beyond a reasonable doubt by all the evidence, direct and circumstantial, not only that the crime was committed but that it was the defendant who committed it.

TT, vol. III, 790-793, 4/11/24 (emphasis added).

Defendant's claim is without merit because the trial court quoted *verbatim* from Section 4.07A of the Pennsylvania Standard Suggested Criminal Jury Instructions on the issue of Identification Testimony. *See Commonwealth v. Sandusky*, 77 A.3d 663, 674 (Pa. Super. 2013),

38

(where trial court quoted near verbatim from Pennsylvania Suggested Standard Criminal Jury Instructions, trial court committed no error in charging jury).

Furthermore, the Court held a conference on April 11, 2024 following the completion of presentation of evidence and prior to the jury charge. TT, vol. III, 767, 4/11/24. The purpose of the conference, also called a charging meeting, was to provide Defendant and the Commonwealth an opportunity to review the Court's proposed jury instruction. A copy of the proposed jury instructions were provided to both the Commonwealth and Defendant for purpose of review. Defendant had an opportunity to review the jury instructions and raise objections. *Id.* Defendant did not raise an objection to the use of Section 4.07A, Identification Testimony, of the Pennsylvania Suggested Standard Criminal Jury Instructions which included the names of law enforcement witnesses. *Id.* at 767-778. It is well established that, "in order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.... By specifically objecting to any obvious error, the trial court can quickly and easily correct the problem and prevent the need for a new trial." *Commonwealth v. McCullum*, 2018 WL 4062302, quoting *Fillmore v. Hill*, 445 Pa.Super. 324, 665 A.2d 514, 515–16 (1995).

This Court submits that, by failing to timely object to the jury instruction, Defendant has waived this issue for purposes of appeal.

39

## Q. Standing Objection to each Side-Bar Ruling

Defendant next asserts that he has a "standing objection" to each side-bar ruling that was against his well-established constitutional rights.

The Pennsylvania Superior Court has clearly stated that "when a court has to guess what issues a defendant is appealing, that is not enough for meaningful review. Similarly, when a defendant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues. In other words, a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all." *Commonwealth v. Reeves*, 907 A.2d 1 (Pa. Super. 2006); *see also Commonwealth v. Dowling*, 778 A. 2d 683 (Pa. Super. 2001).

Defendant has failed to set forth a developed legal argument in this section supported with citations to legal authority. This Court submits that Defendant's claim under Section Q is not reviewable, and this claim is waived for vagueness and lack of development.

## R. Defendant Denied Opportunity to Present Proof of Employment to Jury

### 1. Standard of Review

"In reviewing a trial court's ruling on the admissibility of evidence, [the] standard of review is one of deference. *Commonwealth v. Thompson*, 2014 PA Super 273, 106 A.3d 742 (Pa. Super. Ct. 2014). Questions concerning the admissibility of evidence are within "the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." *Id.*

## 2. Court's Analysis

Defendant next argues that his constitutional rights were violated because he was denied the opportunity to present proof of employment to the jury.

At trial, Defendant sought to introduce documents demonstrating Defendant's employment and sources of income. TT, vol. III, 752, 4/11/2024. Defendant argued that Agent Barna's testimony, stating that Defendant did not work, was untruthful. *Id.* at 753. After the Commonwealth rested, Defendant informed the Court that he had no witnesses to present at trial. Defendant further advised the Court that he did not intend to testify at trial. *Id.* at 748; *see also* U.S. Const. amend. V. ("[No person] shall be compelled in any criminal case to be a witness against himself…"). The Court conducted a colloquy to ensure Defendant understood both his right to testify and his right to remain silent. *Id.* at 748-749. Both Defendant and ADA Wheeler stated that they were ready to begin closing arguments. *Id.* at 752.

After the colloquy, Defendant then indicated that he had evidence that he "wanted the jury to see" to establish his sources of income. *Id.* at 753. The Commonwealth did not stipulate to the documents being admitted into evidence. *Id.* at 753-756. "Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901. Defendant did not argue that the documents which he sought to be admitted into evidence and shown to the jury were self-authenticating. *See* Pa.R.E. 902. Defendant was precluded from entering the documents into evidence trial without presenting a witness to lay a proper foundation and adequately authenticate the documents, in accordance with Rule 901. *Id.* at 754. *See Commonwealth v. Koch*, 2011 PA Super 201, 39 A.3d 996, 1002 (Pa. Super. Ct. 2011)

41

("Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient.").

For the reasons set forth above, this Court respectfully submits that its ruling be affirmed on the merits and Defendant's appeal be dismissed.

### S. Rule 600(A) Lack of Due Diligence

#### 1. Standard of Review

"In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa. Super. 2004) (internal citations omitted).

#### 2. Court's Analysis

Defendant, through counsel, filed an Omnibus Pre-Trial Motion which included a Motion to Dismiss Pursuant to Pa.R.Crim. Rule 600 (Lack of Due Diligence) on July 27, 2023. Defendant had asserted, pursuant to Pa.R.Crim.P. 600, that the Commonwealth failed to exercise due diligence in bringing Defendant to trial. *See* Defendant's Omnibus Pre-Trial Motion, 7/27/23; *see also* Defendant's Brief in Support of Defendant's Omnibus Pre-Trial Motion(s), 12/1/23. More specifically, Defendant contended that the extensive period of time that it took to execute the arrest warrant on Defendant was a result of the Commonwealth's failure to act with the requisite due diligence. The Court held a hearing thereon on October 13, 2023. Defendant's motion was denied by way of Opinion and Order entered January 26, 2024. The reasons for the Court's January 26, 2024 Order already appear of record in said Opinion and Order. Therefore, this Court hereby incorporates the same as its Pa.R.A.P. 1925(a) Opinion and attaches it hereto. For the reasons set forth in the January 26, 2024 Opinion and Order, this Court respectfully submits that its order be affirmed on the merits and Defendant's appeal be dismissed.

42

### T. Double Jeopardy Clause Pursuant to 18 PA CS 110

#### 1. Standard of Review

The Superior Court's scope and standard of review is that "[a]n appeal grounded in double jeopardy raises a question of constitutional law. This Court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is de novo." *Commonwealth v. Taylor*, 120 A.3d 1017, 1021 (Pa. Super. 2015) (internal citations omitted).

#### 2. Court's Analysis

Defendant next argues that the Commonwealth failed to file all of the criminal charges at one time pursuant to 18 Pa.C.S. §110 which is in violation of his well-established constitutional rights.

Defendant, through counsel, filed an Omnibus Pre-Trial Motion which included a Motion to Dismiss Pursuant to 18 Pa.C.S. §110 on July 27, 2023. The Court held a hearing thereon on October 13, 2023. Judge Costanzo denied the motion to dismiss by way of Opinion and Order dated January 26, 2024. The reasons for the Court's January 26, 2024 Order already appear of record in said Opinion and Order. Therefore, this Court hereby incorporates the same as its Pa.R.A.P. 1925(a) Opinion and attaches it hereto. For the reasons set forth in the January 26, 2024 Opinion and Order, this Court respectfully submits that its order be affirmed on the merits and Defendant's appeal be dismissed.

### U. Cumulative Prosecutorial Misconducts

#### 1. Standard of Review

"Prosecutorial misconduct is evaluated under a harmless error standard." *Commonwealth v. Santiago-Burgos*, 2024 PA Super 73, 314 A.3d 535, 548 (Pa. Super. Ct. 2024).

43

## 2.    Court's Analysis

Defendant next argues that Rachel Wheeler, the Washington County Assistant District Attorney who served as the prosecutor at trial, engaged in "blatant and cumulative prosecutorial misconducts" throughout the case. Defendant, in his Concise Statement, fails to cite to specific incidents to support his claim. Rather, Defendant states that the prosecutorial misconduct has been so "egregiously outrageous" that it is impossible to give specific examples of the misconduct. *See* Defendant's 1925(b) Concise Statements, Section U.

The standard for the grant of a new trial as a result of prosecutorial misconduct is very strict. Our appellate court has repeatedly stated that: "[t]o prevail on a prosecutorial misconduct claim, Defendant must show the prosecutor's actions had the unavoidable effect of undermining the fact-finder's neutrality so as to preclude a true verdict." *Commonwealth v. Philistin*, 617 Pa. 358, 387, 53 A.3d 1, 17 (2012), citing to *Commonwealth v. Kennedy*, 598 Pa. 621, 959 A.2d 916, 923–24 (2008).

Defendant, in his "Direct Appeal" brief, cites to specific incidents to support his claim of prosecutorial misconduct. Defendant broadly asserts that ADA Wheeler knowingly and willfully elicited "false perjurious testimony" from Washington County Drug Task Force Supervisor Richard Gluth, to support the use of "knowingly fraudulent fabricated evidence control logs" during trial. *See* Defendant's Direct Appeal, Prosecutorial Misconduct.

With respect to "prosecutorial misconduct," Defendant has established nothing by way of facts or evidence to show that the evidence control logs were somehow fabricated or changed. To the contrary, as set forth in Section G above, extensive testimony and evidence was presented at trial relating to the evidence control logs. There is simply no testimony in the record which would establish that these documents were fabricated.

Defendant next argues that ADA Wheeler elicited "perjurious preliminary hearing testimony double hearsay" from Officer Fichter at the preliminary hearing on May 3, 2023. Defendant again sets forth an entirely undeveloped legal argument, with no citation to relevant legal authority, that the Commonwealth suppressed exculpatory evidence at the preliminary hearing stage by not calling certain witnesses to testify at that hearing. Defendant cites to *Commonwealth v. Bazemore*, 531 Pa. 582 (1992) is support of his argument. In *Bazemore*, the Pennsylvania Supreme Court held that the transcript of prior testimony from a preliminary hearing of an unavailable Commonwealth witness was not admissible at trial where the Commonwealth failed to disclose to the defense vital impeachment evidence regarding this witness prior to the preliminary hearing. Defendant's reliance on *Bazemore* to support his claim is entirely misplaced. Defendant also cites to *United States v. Rispo*, where the United States Court of Appeals, Third Circuit, Court stated that "the district attorney knowingly concealed the exculpatory testimony of an eye witness to a crime. If the district attorney had knowingly used perjured testimony, there would have been grounds for an automatic reversal." 460 F.2d 965, 974 (3d Cir. 1972). In the instant case, there is no record evidence to demonstrate that ADA Wheeler knowingly concealed exculpatory testimony or knowingly elicited perjured testimony. There is no testimony to support the claim that ADA Wheeler knowingly elicited perjurious testimony at the preliminary hearing.

Defendant also contends that ADA Wheeler presented a "fabricated fraudulent warrant service log" at trial. Defendant's argument is misplaced. As set forth in Section K above, the Commonwealth did not present Officer Fichter's arrest service log at trial. Defendant sought to use a copy of the arrest warrant service log to cross-examine Officer Fichter at trial. This Court precluded the line of questioning in response to an objection raised by the Commonwealth. TT,

vol. II, 505, 4/10/24. Defendant's line of questioning was precluded based on concerns that it would confuse the issues for the jury. The line of questioning was also irrelevant to the issue of guilt or innocence.

Officer Fichter testified at an Omnibus Pretrial Hearing as to the way he documented attempts to serve the warrant by writing the list of dates on the inside of his case file. Omnibus Pretrial Hr'g Tr., 108-109, 10/13/2023. Defendant references this list of attempts to serve the warrant as an arrest warrant service log. TT, vol. I, 232, 4/9/24. With respect to "prosecutorial misconduct," Defendant has established nothing by way of facts or evidence to show that Officer Fichter's arrest warrant service log was fabricated or changed.

This Court submits that, for the reasons set forth above, there is no merit to Defendant's claim of prosecutorial misconduct.

### U.    Suggestive Single Photo Identification Procedure[9]

#### 1.    Standard of Review

"When determining the admissibility of identification testimony, this Court has held that suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but 'suggestiveness alone does not warrant exclusion.' A pretrial identification will not be suppressed as violative of due process rights unless the facts demonstrate that the identification procedure was so infected by suggestiveness 'as to give rise to a substantial likelihood of irreparable misidentification.'" *Commonwealth v. Kubis*, 2009 PA Super 140, 978 A.2d 391, 396 (Pa. Super. Ct. 2009) (internal citations omitted).

---

[9] Defendant's 1925(b) Concise Statement categorizes two (2) separate claims as Section "U."

## 2.    Court's Analysis

Defendant next argues that the single suggestive photo identification procedure utilized by law enforcement during its investigation was highly prejudicial to Defendant and gave rise to a very substantial likelihood of irreparable wanton misidentification.

An unlawfully obtained pretrial identification will be excluded from trial if its admissibility is raised in a pretrial motion and ruled upon by the Court in a pretrial evidentiary hearing. *See Commonwealth v. Jenkins*, 232 Pa.Super. 523 ((1975). The Pennsylvania Supreme Court has clearly stated that where a defendant did not, either before or during trial, raise the issue that the pretrial identification procedure used by law enforcement was impermissibly suggestive, the issue was waived. *See Commonwealth v. Harris*, 479 Pa. 131 (1978).

Defendant filed an Omnibus Pretrial motion in this case, however that motion did not relate to the pretrial identification issue. *See* Defendant's Omnibus Pre-Trial Motion, 7/27/2023. Furthermore, this evidence was not objected to at the time it was introduced at trial. Defendant cites to *Commonwealth v. Dupont*, No. 721 MDA 2019, 2020 WL 886133 (Pa. Super. Feb. 24, 2020), superseded, 237 A.3d 426 (Pa. Super. 2020) and *Commonwealth v. Small*, 741 A.2d 666 (Pa. 1999) in his "Direct Appeal" brief to support his argument. Defendant fails to recognize that the legal authority that he uses to support his argument involve pretrial identification issues which were addressed by the Court at a suppression hearing.

This Court submits that, for the reasons set forth above, Defendant has waived this issue.

47

## V.  Failing to Disclose GPS Tracker Information is a Brady Violation

### 1.  Standard of Review

Whether a *Brady* violation warrants a new trial presents a question of law, for which the standard of review is de novo and the scope of review is plenary. *See Commonwealth v. Bagnall*, 661 Pa. 123, 235 A.3d 1075 (2020).

### 2.  Court's Analysis

Defendant argues that the Commonwealth purposely failed to disclose, prior to trial, evidence regarding the use of the GPS tracking device such as affidavits, warrants and/or court orders in violation of his constitutional right to due process as recognized in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963).

"[T]o establish a *Brady* violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." *Commonwealth v. Gibson*, 597 Pa. 402, 429, 951 A.2d 1110, 1126 (2008). In other words: "there are three necessary components that demonstrate a violation of the *Brady* strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." *Commonwealth v. Lambert*, 884 A.2d 848 (Pa. 2005), citing *Commonwealth v. Burke*. 781 A.2d 1136, 1141 (Pa.2001). To show prejudice, it must be established that the new information "would have changed the outcome of the trial if it had been introduced." *Commonwealth v. Sattazahn*, 869 A.2d 529, 534 (Pa. Super. 2005).

With respect to the first prong, Defendant clearly fails to establish that the information relating to the use of the GPS tracking device is favorable to Defendant because it is exculpatory. In the present case, the Commonwealth did not present any evidence to the jury that a GPS

48

tracking device was utilized by law enforcement during the six controlled buys which resulted in the filing of charges against Defendant. Defendant also fails to demonstrate how this information would serve to impeach Agent Barna, or any of the law enforcement witnesses at trial, when their testimony strictly related to physical surveillance of the controlled buys.

With respect to the second prong, namely, that the prosecution suppressed the evidence, either willfully or inadvertently, the record evidence demonstrates that Defendant was not provided information, in discovery, regarding law enforcement's utilization of a tracking device during their investigation. The record evidence further demonstrates that the Commonwealth was unaware of the use of a tracking device and was not in possession of these documents prior to trial. As a result, the information was not turned over to Defendant in pre-trial discovery. TT, vol. II, 7, lines 6-25, 4/10/24. Agent Barna testified that he did not turn over to the Washington County District Attorney's office, in discovery, any information regarding the tracking device utilized by the Pennsylvania Office of Attorney General. TT, vol. I, 21, 4/9/24. Agent Barna testified that the GPS tracker was not used as evidence for anything other than furthering the investigation. Agent Barna further explained that the GPS tracking device was not used during the controlled buys relating to Defendant's case; instead, law enforcement only utilized physical surveillance for the controlled buys. *Id.* at 25.

Pursuant to *Brady* and its progeny, the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). However, there is "no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). "The mere possibility that an item of

49

undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). As set forth in *Kyles*, there is no constitutional requirement that the prosecution make a complete accountings to the defense of all police investigatory work performed by law enforcement in this case, such as the use of a tracking device, when the device was only used to further the investigation and not utilized during the six controlled buys.

Defendant's argument is lacking as it relates to the third *Brady* prong. Under the third prong, Defendant must establish that the Commonwealth's failure to disclose information, including the affidavit, warrant and/or court order relating to the use of a GPS tracking device, prejudiced Defendant at trial. "To satisfy the prejudice inquiry, the evidence suppressed must have been material to guilt or punishment." *Gibson*, 951 A.2d at 1126–1127 (Pa.2008). "Where evidence material to the guilt or punishment of the accused is withheld, irrespective of the good or bad faith of the prosecutor, a violation of due process has occurred." *Commonwealth v. Strong*, 563 Pa. 455, 462, 761 A.2d 1167, 1171 (2000) (internal citations omitted) (emphasis added). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Commonwealth v. Cam Ly*, 602 Pa. 268, 294, 980 A.2d 61, 76 (2009), citing to *Kyles v. Whitley*, 514 U.S. 419, 433–434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

Here, Defendant has failed to demonstrate, in any specific way, how the information regarding the tracking device was material or would have changed the outcome of the trial. As set forth above, the Commonwealth did not present any evidence to the jury that a GPS tracking

50

device was utilized by law enforcement during the six controlled buys. It is the defendant's burden to demonstrate the materiality of the evidence. *See Commonwealth v. Santiago*, 654 A.2d 1062, 1072 (Pa. Super. 1994).

This Court submits that, for the reasons set forth above, Defendant's claim should be dismissed.

Defendant cites to *Commonwealth v. Chamberlain*, that states "the Due Process Clause of the Fourteenth Amendment requires defendants be provided access to certain kinds of evidence prior to trial, so they may 'be afforded a meaningful opportunity to present a complete defense.'" 612 Pa. 107, 142, 30 A.3d 381, 402 (2011) (internal citations omitted). Defendant fails to acknowledge, however, that the Commonwealth did not submit evidence to the jury of the tracking device at trial. Defendant fails to set forth and articulate in his Concise Statement or written "Direct Appeal" brief how disclosure of the affidavit, warrant and/or court order regarding the use of a tracking device by law enforcement during its investigation would have resulted in a different outcome at trial. Therefore, Defendant's claim must fail.

## W.    Ineffective Assistance of Pretrial Counsel

Defendant next contends that his prior attorney, Adam Yarussi, Esquire, was ineffective for failing to obtain preliminary hearing transcripts for use in drafting an Omnibus Pretrial Motion and Motion to Set Bail. Defendant also argues that Yarussi failed to properly raise and preserve the statute of limitations issue regarding counts 7 through 12 (simple possession) of the Bill of Information.

The Pennsylvania Supreme Court has clearly stated that "ineffectiveness claims are not to be raised in the first instance on direct appeal but must await collateral review." *Commonwealth v. Crosby*, 844 A.2d 1271 (Pa. Super. 2004). The Supreme Court has held, however, that where

51

the trial court has held a hearing on a claim of trial counsel's ineffectiveness, and the record has been fully developed on that issue, it is appropriate for this Court to review an ineffectiveness claim on direct appeal. *Id.*, citing *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003).

Here, Defendant has raised ineffective assistance of counsel claims for the first time in his Direct Appeal. *See* Defendant's 1925(b) Concise Statement, Section V. The trial court has not held a hearing on Defendant's claims of pretrial counsel's ineffectiveness. As the record has not been fully developed regarding this issue, this Court suggests that it is not appropriate for the Superior Court of Pennsylvania to review these claims on direct appeal.

## CONCLUSION

For the reasons set forth above, the undersigned respectfully submits that the judgment of sentence should be affirmed.

BY THE COURT:

DATE: SEPTEMBER 18, 2024

_____J.
JESSE PETTIT, JUDGE

WASHINGTON CO PA

'24 SEP 18 PM1:20

52

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA,  )
                                )
v.                              )      No. 746-2023
                                )
JASON WOODALL,                  )
                                )
        Defendant.              )

**OPINION AND ORDER**

This matter comes before the Court upon Defendant, Jason Woodall's Omnibus Pretrial

Motion. By way of an amended Bill of Information filed on December 20, 2023, the

Commonwealth charged Defendant with six counts of Possession with Intent to Deliver a

Controlled Substance, cocaine, 35 P.S. § 780-113(a)(30), an ungraded Felony; and six counts of

Possession of a Controlled Substance, cocaine, 35 P.S. § 780-113(a)(16), an ungraded

Misdemeanor.[1]

Defendant filed the instant Omnibus Pretrial Motion on July 27, 2023, and the Court held

a hearing thereon on October 13, 2023. Present at this hearing were Rachel Wheeler, Esquire,

representing the Commonwealth, and Adam Yarussi, Esquire, representing Defendant. At the

close of the hearing, this Court ordered both parties to submit proposed findings of fact and

conclusions of law thirty days after the filing of the official transcript. The official transcript of

the Omnibus Pretrial Motion Hearing was filed on November 9, 2023. Thereafter, Defendant and

the Commonwealth timely submitted their proposed findings of fact and conclusions of law.

Upon examining the relevant facts and law, this Court issues the following opinion and order.

_____

[1] On December 20, 2023, the Commonwealth filed a motion to amend the original Bill of Information filed on May
15, 2023 in order to clarify the date ranges corresponding to the Possession of a Controlled Substance charges. This
Court subsequently granted the Commonwealth's motion.

1

**CONCLUSIONS OF LAW**

## I. Motion to Dismiss Pursuant to Rule 600

The first issue raised by Defendant in his Omnibus Pretrial Motion is a Motion to Dismiss Pursuant to Pa.R.Crim.P. 600 based upon his assertion that the Commonwealth has failed to exercise due diligence in bringing Defendant to trial. *See* Omnibus Pre-Trial Motion, 7/27/23; *See also* Brief in Support of Defendant's Omnibus Pre-Trial Motion(s), 12/1/23. More specifically, Defendant contends that the extensive period of time that it took to execute the arrest warrant on Defendant was the result of the Commonwealth's failure to act with the requisite due diligence. *Id.* For the foregoing reasons, Defendant's claim lacks merit that would entitle him to relief.

The right to a speedy trial is "one of the most basic rights preserved by our Constitution." *Commonwealth v. Barbour,* 189 A.3d 994, 954 (Pa. 2018) (internal citations omitted)." The government's exercise of its power to detain an individual during the pendency of a criminal prosecution places a heavy burden upon the accused. *Id.* As such, "the speedy trial guarantee 'is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.'" *Id.*

Rule 600, which sets forth the speedy trial requirements, provides, in pertinent part, as follows:

> Rule 600. Prompt Trial
>
> (A)(2)(a) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

2

(C)(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

(D)(1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600.

As the text of Rule 600 makes clear, the Commonwealth is generally required to bring a defendant to trial within 365 days from the date on which the criminal complaint was filed. Pa.R.Crim.P. 600(A)(2)(a). Where the Commonwealth fails to bring a defendant to trial within the time prescribed by the rule, he may request that the charges against him be dismissed with prejudice on the grounds that the Commonwealth has violated Rule 600. Pa.R.Crim.P. 600(D)(1).

Under the old version of Rule 600, a court assessing a Rule 600 claim was to account for two mutually exclusive categories: "excludable time" and "excusable delay." *Commonwealth v. Wiggins,* 248 A.3d 1285, 1288 (Pa. Super. 2021). "Excludable time" was defined by our appellate courts as "delay that is attributable to the defendant or his counsel[,]" whereas "excusable delay" was defined as "delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence." *Id.* at 1288-1289 (internal citations omitted).

However, following alterations to Rule 600, "[t]he new Rule 600 eliminated distinction between these two buckets of removable calculable time. Under its new verbiage, 'periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence' forms the basis of what is known as 'includable time.'

3

Conversely, all other periods of delay are excluded from the Rule 600 calculation." *Wiggins,* 248 A.3d at 1289.

Thus, "when a court is faced with a Rule 600 motion asserting a facial violation of the new Rule 600, the onus is on the Commonwealth to demonstrate that it engaged in due diligence in at least being capable of bringing a defendant to trial within the prescribed time parameters." *Wiggins,* 248 A.3d at 1289. In showing that the Commonwealth acted with due diligence, it must prove so by a preponderance of the evidence. *Id.* Further, "[d]ue diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect diligence and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id.*

Turning to the instant matter, the evidence introduced by the Commonwealth and adduced through the testimony at the hearing on Defendant's Omnibus Pretrial Motion, established, by a preponderance of the evidence, that the investigating officers in this matter acted with due diligence in executing the arrest warrant for Defendant.

On March 2, 2021, a criminal complaint was filed against Defendant in the present matter. Contemporaneously, an arrest warrant was issued for Defendant, listing 556 Sunnyfield Drive, Monroeville, Pennsylvania as Defendant's place of residence. Ultimately, Defendant was arrested on the warrant on April 14, 2023.

With regard to the efforts of law enforcement to execute the arrest warrant on Defendant, Agent Joseph Barna of the Pennsylvania Attorney General's Office credibly testified at the hearing on Defendant's initial motion to set bail that following the issuance of the arrest warrant for Defendant, he notified the Monroeville Police Department, Penn Hills Police Department,

4

Plum Boro Police Department, as well as various other police departments in surrounding areas of the warrant and provided them with a description of Defendant's vehicle to assist in the apprehension of Defendant. Commonwealth's Exhibit 2 at 32:16-33:1.[2]

Agent Barna further credibly testified at the bail hearing regarding his knowledge of the efforts that the Monroeville Police Department went to in executing the arrest warrant on Defendant, specifically stating that, "Monroeville definitely stopped there and very proactive guys were looking, but his vehicle didn't come back [to the residence.] He simply moved away. There was surveillance done on the residence, and he wasn't viewed coming or going from the residence anymore like he was before in the past." Commonwealth's Exhibit 2 at 34:7-12. Agent Barna also provided credible testimony regarding efforts on the part of investigating officers to track down Defendant through other individuals, including Defendant's girlfriend, which evidently were to no avail. *Id.* at 35:14-24.

At the hearing on Defendant's Omnibus Pretrial Motion, Agent Barna again provided further credible testimony concerning the efforts that his office put into executing Defendant's arrest warrant, stating that he, as well as other agents, had spent countless hours attempting to locate and serve the arrest warrant on Defendant. Hrg. Tr., 10/13/23 at 46:15-19.

The testimony provided by Agent Barna regarding the efforts on the part of the Monroeville Police Department to execute the arrest warrant on Defendant was bolstered by the testimony of Sergeant Steven Maritz of the Monroeville Police Department, who testified that his department, on numerous occasions, attempted to execute the arrest warrant by visiting Defendant's residence at 556 Sunnyfield Drive. Hrg.Tr., 10/13/23 at 84:9-15.

---

[2] The transcript of Defendant's initial bail hearing held on June 20, 2023 was introduced and admitted at the hearing on Defendant's Omnibus Pretrial Motion as "Commonwealth's Exhibit 2."

5

In addition to the efforts on the part of Agent Barna and Sergeant Maritz, Detective Joseph Fichter of the Washington County District Attorney's Drug Task Force provided credible testimony at the initial bail hearing regarding his efforts to execute the arrest warrant on Defendant. Specifically, Detective Fichter credibly testified that on four separate occasions, he personally attempted to execute the arrest warrant. Commonwealth's Exhibit 2 at 45:13-46:3. In addition to attempting personal service of the arrest warrant, Detective Fichter provided a copy of the warrant to the Monroeville Police Department, and notified the Pennsylvania Attorney General's Office after obtaining the warrant. *Id.* at 46:4-13.

Detective Fichter's testimony, along with the testimony of the other law enforcement officials, concerning their efforts to execute the arrest warrant were further bolstered by Detective Fichter's credible testimony at the hearing on Defendant's Omnibus Pretrial Motion regarding the dates on which he was notified of, or personally attempted to serve the warrant. Specifically, Detective Fichter testified that attempts by the investigating officers to execute the arrest warrant on Defendant occurred on March 9, 2021, March 17, 2021, May 17, 2021, August 2, 2021, January 17, 2022, December 5, 2022, and January 31, 2023. Hrg. Tr., 10/13/23 at 110:24-115:8. In addition to bolstering the credibility of the officers' testimony, the aforementioned testimony regarding the dates on which attempts were made to execute the arrest warrant demonstrate an exhaustive effort on the part of the investigating officers to serve the warrant.

Further, Detective Fichter credibly testified that along with the efforts on the part of the investigating officers to personally execute the warrant, law enforcement officials regularly attempted to ascertain new addresses for Defendant, utilizing PennDOT, Google, and other

VIA MONTISION CO
CLERK OF COURTS

2024 JAN 26 PM 2: 53

FILED

6

platforms. Hrg.Tr., 10/13/23 at 125:6-11. Despite these efforts, investigating officers were unable to obtain an address for Defendant aside from the 556 Sunnyfield Drive address.

Lastly, Detective Richard Gluth of the Washington County District Attorney's Drug Task Force also provided credible testimony of the efforts on the part of the investigating officers to execute the arrest warrant on Defendant. Specifically, Detective Gluth credibly testified that he emailed and faxed the arrest warrant to the Monroeville Police Department. Hrg.Tr.,10/13/23 at 129:21-130:8. Detective Gluth further credibly testified that he was notified on numerous occasions by Detective James Monkelis of the Monroeville Police Department regarding the continuing attempts to execute the arrest warrant. *Id.* at 130:9-131:5.

As the aforementioned testimony firmly established, the investigating officers in this matter acted with a significant degree of due diligence in executing the arrest warrant on Defendant. The credible testimony provided by the investigating officers at the initial bail hearing on June 20, 2023 and at the hearing on Defendant's Omnibus Pretrial Motion demonstrated an organized and exhaustive effort on the part of various investigating offices and police departments to attempt to ascertain the whereabouts of Defendant and serve the arrest warrant. Although the attempts to serve the warrant on Defendant at his only known address at 556 Sunnyfield Drive were fruitless, the investigating officers nevertheless continued to surveille and attempt service at the residence. Additionally, the investigating officers regularly engaged in efforts to attempt to locate Defendant elsewhere, continuously checking for an updated address and investigating leads into Defendant's known associates, including his girlfriend. The fact that the investigating officers were unable to effectuate service at Defendant's only known address was by no means the fault of a lack of due diligence on their part, but rather, because Defendant "coincidentally" decided to move to Sharon, Pennsylvania the same month that the warrant for

his arrest was issued and failed to update his address at any point thereafter.[3] While Rule 600 was designed to protect the accused's right to a speedy trial, "the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth." *Commonwealth v. Hunt,* 858 A.2d 1234, 1239 (Pa. Super. 2004) (internal citations omitted).

Accordingly, for the aforementioned reasons, Defendant's Motion to Dismiss Pursuant to Rule 600 is without merit.

## II.     Motion to Dismiss Pursuant to 18 Pa.C.S. § 110

The second issue raised by Defendant in his Omnibus Pretrial Motion is a motion to dismiss two of the six counts of Possession with Intent to Deliver a Controlled Substance and two of the six counts of Possession of a Controlled Substance that occurred in Allegheny County, based upon his contention that prosecution of said charges is barred by 18 Pa.C.S. § 110. *See* Omnibus Pre-Trial Motion, 7/27/23. More specifically, Defendant argues that because the aforementioned charges occurred in Allegheny County, said charges should have been brought in Allegheny County while Defendant was under investigation at Allegheny County Docket Number CP-020CR-0004608-2020. *Id.*

In an order dated November 9, 2023, this Court directed both Defendant and the Commonwealth to file a brief regarding the issues raised by Defendant in his Omnibus Pretrial Motion. *See* Order Directing Briefs to be Filed, 11/9/23. Curiously, Defendant wholly failed to develop, let alone mention, the instant issue in his brief. As such, due to Defendant's failure to

---

[3] Per Defendant's testimony at the hearing on Defendant's motion to set bail held on June 20, 2023, Defendant, himself, stated that the 556 Sunnyfield Drive address was his only address since 1988. Commonwealth's Exhibit 2 at 23:21-24:10. While Defendant did testify that he moved to Sharon, Pennsylvania, doing so quite significantly in March of 2021 when the arrest warrant was issued, he indicated that he did not update his address from the 556 Sunnyfield Drive address. *Id.* at 8:10-9:5; 24:5-10.

sufficiently develop his Motion to Dismiss Pursuant to 18 Pa.C.S. § 110 and present legal argument in support thereof, Defendant has waived the issue.

Even assuming *arguendo* that Defendant properly preserved the present issue for consideration, the motion nevertheless fails on its merits. 18 Pa.C.S. § 110 provides, as follows:

> §110. When prosecution barred by former prosecution for different offense
>
> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (1) The former prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for:
>
> (i) any offense of which the defendant could have been convicted on the first prosecution;
>
> (ii) any offense based on the same conduct or arising from the same criminal episode, if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and occurred within the same judicial district as the former prosecution unless the court ordered a separate trial of the charge of such offense or the offense of which the defendant was formerly convicted or acquitted was a summary offense or a summary traffic offense; or
>
> (iii) the same conduct, unless:
>
> (A) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or
>
> (B) the second offense was not consummated when the former trial began.
>
> (2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense.
>
> (3) The former prosecution was improperly terminated, as improper termination is defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is for an offense of which the defendant could have been convicted had the former prosecution not been improperly terminated.

18 Pa.C.S. § 110.

2024 JAN 26 PM 2: 53


FILED

At the hearing on Defendant's Omnibus Pretrial Motion, Sergeant Meritz provided testimony regarding the charges filed against Defendant in Allegheny County at docket number CP-020CR-0004608-2020. Specifically, Sergeant Meritz credibly testified that in 2020, he filed "traffic and possession charges" against Defendant in Allegheny County. Hrg. Tr., 10/13/23 at 79:15-80:2. Relevantly, with respect to the disposition of the Allegheny County case, Sergeant Meritz credibly testified that the charges were *nolle prossed* due to changes in case law governing vehicle searches. *Id.* at 80:3-17. Thus, because the Allegheny County case did not result in an acquittal, conviction, or final order or judgment for Defendant as Section 110 mandates, but rather, was *nolle prossed*, prosecution of the four charges related to Allegheny County in the instant matter is not barred by Section 110. Accordingly, Defendant's Motion to Dismiss Pursuant to 18 Pa.C.S. § 110 is without merit.

## III. Motion to Dismiss Pursuant to 42 Pa.C.S. § 5552(a)

In Defendant's brief, he appears to raise, for the first time, a motion to dismiss counts seven through twelve of the Bill of Information pursuant to 42 Pa.C.S. § 5552(a). *See* Brief in Support of Defendant's Omnibus Pre-Trial Motion(s), 12/1/23. Defendant, however, is estopped from raising said issue at this juncture, as he failed to properly raise the issue in his Omnibus Pretrial Motion.

Pennsylvania Rule of Criminal Procedure 578 (Omnibus Pretrial Motion for Relief) expressly states that, "all pretrial requests for relief shall be included in one omnibus pretrial motion." Pa.R.Crim.P. 578. Per Rule 578, Defendant was required to raise his motion to dismiss pursuant to 42 Pa.C.S. § 5552(a) in his Omnibus Pretrial Motion. Having failed to do so, the Court shall not consider the merits thereof, as the issue has been waived.

FILED
CLERK OF COURTS
2024 JAN 26 PH 2:53

10

## IV.  Motion to Dismiss: Improper Venue and Lack of Subject Matter Jurisdiction

The third issue raised by Defendant in his Omnibus Pretrial Motion is a motion to dismiss two of the six counts of Possession with Intent to Distribute a Controlled Substance and two of the six counts of Possession of a Controlled Substance for lack of venue and subject matter jurisdiction. *See* Omnibus Pre-Trial Motion, 7/27/23. More specifically, Defendant argues that because these four charges stemmed from conduct occurring in Allegheny County, this Court lacks subject matter jurisdiction over the prosecution of said charges and further, that venue is improper in Washington County. *Id.*

Interestingly, Defendant, again, entirely fails to develop, let alone mention, the instant issue in his brief. The Court need only reiterate that it directed Defendant to brief the issues that he raised in his Omnibus Pretrial Motion. *See* Order Directing Briefs to be Filed, 11/9/23. Accordingly, due to Defendant's failure to develop his motion to dismiss for improper venue and lack of subject matter jurisdiction and provide any legal arguments thereto, said issue has been waived.

Regardless, had Defendant preserved his Motion to Dismiss for Improper Venue and Lack of Subject Matter Jurisdiction, said motion is nonetheless without merit. Pennsylvania Rule of Criminal Procedure 130 (Venue; Transfer of Proceedings) provides, in pertinent part:

> Rule 130. Venue; Transfer of Proceedings
>
> (A) Venue. All criminal proceedings in summary and court cases shall be brought before the issuing authority for the magisterial district in which the offense is alleged to have occurred or before an issuing authority on temporary assignment to serve such magisterial district, subject, however, to the following exceptions:
>
> (3) When charges arising from the same criminal episode occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred.

(B) Transfer of Proceedings in Court Cases.

    (1) Prior to the completion of the preliminary hearing:

        (a) When charges arising from a single criminal episode, which occurred in more than one judicial district,

        (ii) are filed in one judicial district, upon the filing of a written agreement by the attorneys for the Commonwealth, the proceedings shall be transferred to the magisterial district in the judicial district selected by the attorneys for the Commonwealth.

Pa.R.Crim.P. 130.

At the hearing on Defendant's Omnibus Pretrial Motion, the Commonwealth introduced a *"McPhail* Letter" that was sent from the Washington County Office of the District Attorney to Rebecca Spangler, Esquire, First Assistant District Attorney at the Allegheny County District Attorney's Office.[4] As evidenced by said letter, on January 13, 2021, the Washington County Office of the District Attorney contacted the Allegheny County District Attorney's Office to request that Allegheny County cede jurisdiction over the instant matter and permit the Washington County Office of the District Attorney to proceed with the prosecution of the present charges, including those that are alleged to have occurred in Allegheny County, pursuant to Rule 130. *See* Commonwealth's Exhibit 1. Per an email from Rebecca Spangler, Esquire, on January 15, 2021, the Allegheny County District Attorney's Office informed the Washington County Office of the District Attorney that Allegheny County consented to ceding jurisdiction and prosecution of the instant matter to the Washington County Office of the District Attorney. *Id.* Accordingly, as evidenced by the *McPhail* Letter sent by the Washington County Office of the District Attorney, and the Allegheny County District Attorney's Office's response thereto, the Commonwealth, in accordance and compliance with Rule 130, properly transferred the instant proceedings to Washington County.

---

[4] The *"McPhail* Letter" was introduced and admitted at the hearing on Defendant's Omnibus Pretrial Motion as "Commonwealth's Exhibit 1."

## V. Motion to Reveal Confidential Informant Identity

The fourth issue raised by Defendant in his Omnibus Pretrial Motion is a motion to reveal

the identity of the confidential informant in this matter. *See* Omnibus Pre-Trial Motion, 7/27/23.

For the foregoing reasons, Defendant's motion is without merit.

"Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to

require the Commonwealth to reveal the names and addresses of all eyewitnesses, including

*confidential informants*, where a defendant makes a showing of material need and

reasonableness[.]" *Commonwealth v. Marsh*, 997 A.2d 318, 321 (Pa. 2010) (internal citations

omitted) (emphasis added). Rule 573 relevantly states:

> Rule 573. Pretrial Discovery and Inspection
>
> (B) Disclosure by the Commonwealth.
>
>> (2) *Discretionary With the Court.*
>>
>>> (a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
>>> (i)   the names and addresses of eyewitnesses

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth possesses a qualified privilege to withhold the identity of a

confidential source. *Marsh*, 997 A.2d at 321. To overcome this qualified privilege and obtain the

identity of a confidential informant, a defendant must establish, pursuant to Rule 573(B)(2)(a)(i),

that the information is "material to the preparation of the defense and that the request is

reasonable." *Id.* Only after the defendant shows that the identity of the confidential informant is

material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted towards the Commonwealth. *Id.* at 321-322.

In balancing the relevant factors, the trial court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a case, the privilege must give way. In these situations[,] the trial court may require disclosure, and, if the Government withholds the information, dismiss the action.

> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Marsh,* 997 A.2d at 322.

Furthermore:

> Before the informant's identity may be revealed,...the accused must show the information is material to the defense and the request is reasonable. The defendant need not predict exactly what the informant will say, but he must demonstrate a reasonable possibility the informant could give evidence that would exonerate him. More than a mere assertion that disclosure of the informant's identity must be helpful is necessary. Only after this threshold showing that the information is material and the request reasonable is the trial court called upon to determine whether the information is to be revealed.

*Commonwealth v. Ellison,* 213 A.3d 312, 317 (Pa. Super. 2019) (internal citations omitted).

Here, Defendant, in his Omnibus Pretrial Motion and brief, asserts that disclosure of the confidential informant's identity is material to the defense of mistaken identity. *See* Omnibus Pre-Trial Motion, 7/27/23; *See also* Brief in Support of Defendant's Omnibus Pre-Trial Motion(s), 12/1/23. Defendant, however, wholly failed to elaborate further on precisely how

14

such disclosure would assist him in raising the defense of mistaken identity. Specifically, Defendant failed to elicit any testimony at the hearing on his Omnibus Pretrial Motion as to how the identity of the confidential informant, and any evidence that they may provide, would have a reasonable possibility to exonerate Defendant. Rather, what Defendant presented to the Court amounts to a mere assertion that the disclosure of the confidential informant's identity would be helpful. As the *Ellison* Court stated, such a bald assertion is far from adequate in compelling the disclosure of a confidential informant's identity. 213 A.3d at 317.

Moreover, even had Defendant satisfied the aforementioned threshold inquiry, his motion is still without merit. At the hearing on Defendant's Omnibus Pretrial Motion, extensive and credible testimony was presented by Agent Justin Shaffer, Agent Joseph Barna, Detective Steven Maritz, Detective Joseph Fichter, Detective Daniel Eberman, and Detective Kent Mitchell that demonstrated that Defendant was identified by the aforementioned officers at each controlled buy that was conducted during the investigation into this matter.

To briefly summarize, during the controlled buy on March 27, 2019, Agent Barna and Agent Shaffer positively identified Defendant at the controlled buy location. Hrg. Tr., 10/13/23 at 31:1-16; 61:9-63:25. On June 13, 2019, Defendant was again identified during the controlled buy conducted that day, this time by Agent Barna and Detective Maritz. *Id.* at 35:16-25; 74:17-76:2. Next, on July 17, 2019, Defendant was positively identified by Agent Barna, Agent Shaffer, and Detective Maritz during the controlled buy. *Id.* at 40:19-41:3; 64:15-66:8; 77:16-79:1. Defendant was again identified during a controlled buy conducted on August 31, 2019, this time by Detective Fichter, Detective Eberman, and Detective Mitchell. *Id.* at 95:24-97:7; 141:7-143:7; 151:1-153:2. A short time later, on September 18, 2019, Defendant was again identified during one of the controlled buys by Detective Fichter and Detective Mitchell. *Id.* at 100:17-102:23;

15

153:22-155:12. Lastly, on September 23, 2019, Defendant was positively identified during the controlled buy that day by Detective Fichter, Detective Eberman, and Detective Mitchell. *Id.* at 104:4-105:21; 144:3-145:18; 156:12-157:18.

Due to the numerous positive identifications of Defendant made on six separate occasions by six different investigating officers, Defendant's need for disclosure of the confidential informant's identity is significantly lessened, as there was minimal risk of misidentification on the part of the officers, and while not legally determinative, said observations heavily weigh in favor of maintaining the Commonwealth's privilege in withholding the identity of the confidential informant in this matter. *See Commonwealth v. Bing,* 713 A.2d 56 (Pa. 1998) (holding that the defendant was not entitled to the disclosure of the confidential informant's identity where the defendant's identity was based on seven separate observations by three separate individuals).

Accordingly, for the aforementioned reasons, Defendant has failed to establish that the disclosure of the confidential informant's identity is reasonable and material to his defense.

**VI. Motion to Set Bail**

The fifth issue raised by Defendant in his Omnibus Pretrial Motion is a Motion to Set Bail. By way of background, Defendant's bail was denied by Magisterial District Judge Joshua Kanalis on April 14, 2023. Thereafter, on May 16, 2023, Defendant filed a motion to set bail and a hearing was held thereon on June 20, 2023. Following the hearing, this Court denied Defendant's initial motion to set bail.

Now, Defendant attempts, once again, to raise a motion to set bail. The Court, however, is unpersuaded by Defendant's request. Notably, the record is entirely devoid of any evidence that

WASHINGTON CO PA
CLERK OF COURTS

2024 JUN 26 PM 2:53

FILED

16

was presented by Defendant at the hearing on his Omnibus Pretrial Motion that indicates any change in circumstances that occurred following the denial of Defendant's initial motion to set bail that would now entitle Defendant to a bail amount. As such, Defendant's second request to set bail in this matter is denied.

## VII. Motion to Compel Discovery

Finally, Defendant raises a Motion to Compel Discovery. Specifically, Defendant requests the following discovery from the Commonwealth:

I.   Allegheny County Evidence Inventory and Control Log;

II.  Photographs and serial numbers for the amount of $2,600.00 of Currency as it relates to 19-176(c);

III. Complete record of text messages from the confidential informants to the following phone numbers:

1. 412-551-7472

2. 412-657-6457

IV.  Complete records of Facebook Messenger between Confidential Informants and allegedly the Defendant that the Commonwealth has in its possession.

*See* Omnibus Pre-Trial Motion, 7/27/23. In addition to the aforementioned pieces of discovery, Defendant, for the first time in in his brief, requests an additional piece of discovery, namely, "Detective Fichter's file cover sheet that depicts the dates when law enforcement attempted to execute on the arrest warrant at Defendant's residence. *See* Brief in Support of Defendant's

CLERK OF COURTS

2024 JAN 26 PH 2: 53

Omnibus Pre-Trial Motion(s), 12/1/23. For the reasons that follow, Defendant's Motion to Compel Discovery is mostly moot, and otherwise, without merit.

Prior to the presentation of testimony at the hearing on Defendant's Omnibus Pretrial Motion, the Commonwealth informed the Court that it had provided Defendant with two of the four pieces of the requested discovery, specifically, the Allegheny County evidence and inventory log, as well as the photographs and serial numbers for the currency. Hrg. Tr., 10/13/23 at 7:12-8:12. As such, Defendant's request for these two pieces of discovery is moot.

As to the third and fourth items, the text messages from the confidential informants and the Facebook messages between Defendant and the confidential informants, the Commonwealth averred at the hearing that those texts and messages do not exist and therefore, are not in the possession of the Commonwealth and cannot be turned over to Defendant for that reason. Hrg. Tr., 10/13/23 at 8:13-25. As such, Defendant's request for the text messages and Facebook messages from the confidential informants is moot and without merit.

Lastly, with regard to Defendant's newly raised request for Detective Fichter's file cover, while the issue is waived, having not been raised in Defendant's Omnibus Pretrial Motion, the Commonwealth, in its brief, avers that it nonetheless has provided a copy of the cover sheet to Defendant. *See* Brief in Opposition to Defendant's Omnibus Pre-Trial Motion, 12/11/23 at 22-23. As such, this issue is also moot.

To the extent that the Court shall address the issue of discovery any further, the Court would merely state that the Commonwealth has a continuing obligation to turn over any discovery to Defendant as it comes into the Commonwealth's possession.

WASHINGTON CO PA

2024 JAN 26 PH 2:53

FILED

18

## ORDER

And now, this 26th day of January, 2024, upon consideration of the Omnibus Pretrial Motion filed by Defendant, and following a hearing thereon, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's motion is DENIED in its entirety.

BY THE COURT:

VALARIE COSTANZO, JUDGE

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) |
| | ) |
| | ) |
| vs. | ) No. 746-2023 |
| | ) |
| JASON M. WOODALL, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter comes before the Court upon Defendant, Jason Woodall's *Pro Se* Motion Pursuant to Rule 600(B), (D)(2) and (E). By way of an amended Bill of Information filed on December 20, 2023, the Commonwealth charged Defendant with six counts of Possession with Intent to Deliver a Controlled Substance, cocaine, 35 P.S. § 780-113(a)(30), an ungraded Felony; and six counts of Possession of a Controlled Substance, cocaine, 35 P.S. § 780-113(a)(16), an ungraded Misdemeanor.

Defendant filed the instant Motion on February 23, 2024 and presented the Motion to the Court on March 5, 2024. The Court scheduled an evidentiary hearing for March 12, 2024, for the limited purpose of determining whether Defendant is entitled to immediate release on nominal bail pursuant to Pa.R.Crim.P. 600(B) and (D)(2).[1] Present at this hearing was Assistant District Attorney Rachel Wheeler, representing the Commonwealth, and Defendant, a *Pro-Se* Litigant. Assistant Public Defender Patrick Fitch, who was appointed on March 5, 2024 to serve

---

[1] The Defendant, through prior counsel, filed an Omnibus Pre-Trial Motion on July 27, 2023 and asserted, pursuant to Pa.R.Crim.P. 600 that the Commonwealth failed to exercise due diligence in bringing Defendant to trial. *See* Omnibus Pre-Trial Motion, 7/27/23; *See also* Brief in Support of Defendant's Omnibus Pre-Trial Motion(s), 12/1/23. More specifically, the Defendant contended that the extensive period of time that it took to execute the arrest warrant on Defendant was a result of the Commonwealth's failure to act with the requisite due diligence. *Id.* Judge Valarie Costanzo, after a hearing on the issue, denied Defendant's motion by way of an Opinion and Order dated January 26, 2024.

as standby counsel to aid the Defendant if and when he requests help, was also present.

## CONCLUSIONS OF LAW

The right to a speedy, public trial is "one of the most basic rights preserved by our Constitution." *Commonwealth v. Barbour*, 189 A.3d 944, 954 (Pa. 2018) (internal citations omitted). The government's exercise of its power to detain an individual pending a criminal prosecution places a heavy burden upon the accused. *Id.* The guarantee to a speedy trial "is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." *Id.*

Rule 600, which sets forth the speedy trial requirements, provides, in pertinent part, as follows:

Rule 600. Prompt Trial.

**(B) Pretrial Incarceration.** Except in cases in which the defendant is not entitled to release on bail as provided by law, no defendant shall be held in pretrial incarceration in excess of
(1) 180 days from the date on which the complaint is filed; or
(2) 180 days from the date on which the order is filed transferring a court case from the juvenile court to the trial or criminal division; or
(3) 180 days from the date on which the order is filed terminating a defendant's participation in the ARD program pursuant to Rule 318; or
(4) 120 days from the date on which the order of the trial court is filed granting a new trial when no appeal has been perfected; or
(5) 120 days from the date of the written notice from the appellate court to the parties that the record was remanded.
**(C) Computation of Time.**
(2) For purposes of paragraph (B), only periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration. Any other periods of delay shall be included in the computation.
**(D) Remedies.**
(2) Except in cases in which the defendant is not entitled to release on bail as provided by law, when a defendant is held in pretrial incarceration beyond the time set forth in paragraph (B), at any time before trial, the defendant's attorney, or the defendant if unrepresented, may file a written motion requesting that the

defendant be released immediately on nominal bail subject to any nonmonetary conditions of bail imposed by the court as permitted by law. A copy of the motion shall be served on the attorney for the Commonwealth concurrently with filing. The judge shall conduct a hearing on the motion.

Pa. R. Crim. P. 600.

The record demonstrates that on March 2, 2021, a criminal complaint was filed against Defendant in the present case and an arrest warrant was issued. Defendant was subsequently arrested on the warrant on April 14, 2023. Defendant has been incarcerated since his arrest. Defendant's bail was denied by Magisterial District Judge Joshua Kanalis on April 14, 2023. Defendant, through prior counsel, filed a Motion to Set Bail on May 16, 2023. A hearing to address Defendant's bail motion was held on June 20, 2023 before Judge Valarie Costanzo. Judge Costanzo denied Defendant's Motion to Set Bail by order dated June 20, 2023.[2]

The preliminary hearing was originally scheduled for April 24, 2023, but was continued to May 3, 2023 at Defendant's request. *See* Commonwealth's Exhibit 3. The nine day delay is attributed to the Defendant and excludable for purposes of Rule 600 since the delay was caused by Defendant. Pa. R. Crim. P. 600(C)(2).

Defendant filed an Omnibus Pre-Trial Motion on July 27, 2023. *See* Commonwealth's Exhibit 4. A hearing on that Motion was scheduled and held on October 13, 2023. *See* Commonwealth's Exhibit 4. At the close of the hearing, Judge Costanzo ordered both parties to submit briefs thirty days after the filing of the official transcript. The official transcript of the Omnibus Pretrial Motion Hearing was filed on November 9, 2023. *See* Order Directing Briefs to be Filed, 11/9/23. Thereafter, Defendant and the Commonwealth timely submitted their briefs.

---

[2] A Second Request to Set Bail was set forth in Defendant's July 27, 2023 Omnibus Pretrial Motion. Judge Costanzo denied Defendant's request to set bail initially at the October 13, 2023 hearing and in the January 26, 2024 Opinion and Order. *See* Transcript, 10/13/23 at 15:19-22.

*See* Brief in Support of Defendant's Omnibus Pre-Trial Motion(s), 12/1/23; *see also* Brief in Opposition to Defendant's Omnibus Pre-Trial Motion, 12/11/23. Judge Valerie Costanzo's Opinion and Order on this matter was filed on January 26, 2024.

"When a defendant is deemed unavailable for trial, the time is excludable from the Rule [600] calculation..." *Commonwealth v. Hill*, 558 Pa. 238, 254, 736 A.2d 578, 587 (1999). "[A] defendant is ... unavailable for trial if a delay in the commencement of trial is caused by the filing of the pretrial motion." *Id.*

The record shows that in considering Defendant's Pretrial Motion filed on July 27, 2023, the court conducted an evidentiary hearing. The Court ordered both parties to submit briefs thirty days after the filing of the official transcript. The Court subsequently filed an Opinion and Order regarding Defendant's Omnibus Pretrial Motion on January 26, 2024. It is clear that, due to Defendant filing the Omnibus Pretrial Motion, the commencement of his trial was delayed.

In order to determine whether the delay caused by Defendant filing the Omnibus Pre-Trial Motion should be excluded for the Rule 600 calculation, the Court must consider whether the Commonwealth exercised due diligence in opposing the motion. *See Hill*, 736 A.2d at 587. A review of the record reveals that the Commonwealth exercised due diligence in opposing Defendant's motion. The Commonwealth did not seek to continue the hearing after it was scheduled by the Court. The Commonwealth was present and presented several witnesses to testify at the October 13, 2023 hearing. The Commonwealth timely submitted its brief pursuant to the Court's October 13, 2023 order. *See* 10/13/23 Order; *see also* Brief in Opposition to Defendant's Omnibus Pre-Trial Motion, 12/11/23.

Therefore, the period of time from July 27, 2023 to January 26, 2024, one-hundred eighty-three (183) days, is excludable from the Rule 600 calculation. The adjusted mechanical

run date pursuant to Rule 600(B)(1), when factoring the delays attributed to Defendant as set forth above, is April 20, 2024.

## ORDER

And now, this 14th day of March, 2024, upon consideration of Defendant's Motion Pursuant to Rule 600(B), (D)(2) and (E), and following a hearing thereon, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's motion is DENIED.

BY THE COURT:

_____ J.
JESSE PETTIT, JUDGE

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) |
| | ) |
| | ) |
| vs. | ) No. 746-2023 |
| | ) |
| JASON M. WOODALL, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendant, Jason Woodall's *Pro Se* Motion(s)-In-Limine which was filed on March 7, 2024. This Court heard argument on the Defendant's Motion(s)-In-Limine on March 12, 2024.

A review of the record demonstrates that the Defendant, through counsel, filed an Omnibus Pre-Trial Motion on July 27, 2023, which included a Motion to Dismiss Pursuant to Pa.R.Crim. Rule 600, Motion to Dismiss Pursuant to 18 Pa.C.S.§110, Motion to Dismiss Pursuant to 42 Pa.C.S.§5552(a), Motion to Dismiss: Improper Venue and Lack of Subject Matter Jurisdiction, Motion to Reveal Confidential Informant Identity, Motion to Set Bail and Motion to Compel Discovery.

A hearing was held before Judge Valarie Costanzo regarding to Defendant's Omnibus Pre-Trial Motion on October 13, 2023. Present at the hearing were Assistant District Attorney Rachel Wheeler, representing the Commonwealth, and Adam Yarussi, Esquire, representing the Defendant. At the close of the hearing, the Court ordered both parties to submit briefs thirty (30) days after the filing of the official transcript. The official transcript of the Omnibus Pre-Trial Hearing was filed on November 9, 2023. Defendant and the Commonwealth timely submitted

FILED

their briefs. Defendant's Omnibus Pretrial Motion was denied in its entirety by way of an Opinion and Order entered by Judge Costanzo on January 26, 2024.

Defendant, in the instant motion, makes numerous arguments, many of which are not appropriate issues to be raised in a motion *in limine*. Defendant also attempts to reargue issues that have been resolved by written opinion and court order.

A motion *in limine* is a procedure for obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered. *See Commonwealth v. Johnson*, 399 Pa.Super. 266 (1990). "The purpose of a motion *in limine* is two fold: 1) to provide the trial court with a pre-trial opportunity to weigh carefully and consider potentially prejudicial and harmful evidence; and 2) to preclude evidence from ever reaching a jury that may prove to be so prejudicial that no instruction could cure the harm to the defendant, thus reducing the possibility that prejudicial error could occur at trial which would force the trial court to either declare a mistrial in the middle of the case or grant a new trial at its conclusion." *Commonwealth v. Metzer*, 634 A.2d 228 (Pa.Super. 1993).

Defendant, in his Motion(s)-In-Limine, seeks to have the Court dismiss the "simple possession" charges pursuant to 42 Pa.C.S. §5552(a). This matter has already been ruled on by the Court. Defendant, through counsel, raised this issue in his Brief In Support of Defendant's Omnibus Pre-Trial Motion(s) filed on December 1, 2023. Judge Costanzo, in her Opinion and Order dated January 26, 2024, ruled that the Defendant is estopped from raising this issue at this juncture, as he failed to properly raise the issue in his Omnibus Pretrial Motion filed on July 27, 2023.[1]

WASHINGTON CO PA
CLERK OF COURTS

FILED

---

[1] The Commonwealth filed a Motion to Amend the Criminal Information and received leave of Court to do so on December 15, 2023. The order signed by Judge Costanzo was filed on December 20, 2023.

Defendant argues he is not a flight risk and should not have been deemed as one. It appears the Defendant disputes the Court's prior rulings relating to Defendant's motions to set bail. By way of background, Defendant's bail was denied by Magisterial District Judge Joshua Kanalis on April 14, 2023. Defendant filed a motion to set bail and a hearing was held thereon on June 20, 2023. Following the hearing, Judge Costanzo denied Defendant's initial motion to set bail. Defendant, through counsel, filed a Second Request for Motion to Set Bail on July 27, 2023. Judge Costanzo, by way of Opinion and Order dated January 26, 2024, denied the bail modification request, after an extensive Omnibus Pretrial Hearing on October 13, 2023.

Defendant attempts to again raise the issue of subject matter jurisdiction. Defendant's Motion to Dismiss: Improper Venue and Lack of Subject Matter Jurisdiction was denied by Judge Costanzo, after a hearing on October 13, 2023, by way of an Opinion and Order entered on January 26, 2024.

Defendant argues that he has a right to know the identity of the confidential informant in this matter. Defendant's Motion to Reveal Confidential Informant Identity was denied by Judge Costanzo, after a hearing on October 13, 2023, by way of an Opinion and Order entered on January 26, 2024.

Defendant argues that he has not received discovery in this matter. Defendant, in the instant motion, specifically requests text and Facebook messages between the CI and Defendant. This issue was raised in Defendant's prior Motion to Compel Discovery, addressed at the October 13, 2023 hearing and ruled on by Judge Costanzo in her Opinion and Order entered on January 26, 2024.

Throughout Defendant's entire motion, he argues a lack of due diligence on part of the officers involved with his case and Assistant District Attorney Rachel Wheeler in bringing

Defendant to trial. Defendant's Motion to Dismiss Pursuant to Pa.R.Crim. Rule 600, relating to the period of time that it took to execute the arrest warrant on Defendant, was denied by Judge Costanzo by way of Opinion and Order dated January 26, 2024.[2]

Defendant argues that the chain of custody evidence is deficient and should not be admissible. "While the Commonwealth bears the burden of demonstrating some reasonable connection between the proffered exhibits and the true evidence, it need not establish the sanctity of its exhibits beyond a moral certainty. The Commonwealth need not produce every individual who came into contact with an item of evidence, nor must it eliminate every hypothetical possibility of tampering. A complete chain of custody is not required so long as the Commonwealth's evidence, direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibits have remained the same from the time they were first received until the time of trial. *Any gaps in testimony regarding the chain of custody go to the weight to be given the testimony, not to its admissibility.*" *Commonwealth v. Cugnini*, 307 Pa.Super. 113 (1982) (internal citations omitted) (emphasis added).

Defendant argues that the Commonwealth's witnesses, specifically law enforcement officers involved in the investigation, are not credible witnesses and evidence, such as the control logs, are not authentic. It is well established under Pennsylvania law that "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of witnesses." *Commonwealth v. Fuentes*, 2022 PA Super 43, 272 A.3d 511, 516 (Pa. Super. Ct. 2022), *see also Commonwealth v. Ghrist*, 873 WDA 2015, 2016 WL 5173526, at 6 (Pa. Super. Ct. July 13, 2016).

Defendant next appears to petition for Writ of habeas corpus by challenging the pretrial

---

[2] Defendant filed a *Pro Se* Motion Pursuant to Rule 600(B), (D)(2) and (E) on February 23, 2024. Defendant's motion was denied, after a hearing, by way of Opinion and Order dated March 14, 2024.

finding that the Commonwealth has sufficient evidence to establish a prima facie case. Defendant also argues that the "4 corners" of the affidavit of probable cause filed with the criminal complaint lacked probable cause and is vague.[3] It is well established under Pennsylvania law that the Commonwealth may present additional evidence to establish that the defendant has committed the elements of the offenses charged. *See Commonwealth v. Dantzler*, 135 A.3d 1109 (Pa.Super. 2016); *Commonwealth v. Karlson*, 449 Pa. Super. 378 (1996). At the court proceeding on March 12, 2024, the Commonwealth submitted the transcript of the October 13, 2023 Omnibus Pretrial Hearing as additional proof that a prima facie case exists. *See* Exhibit 7, March 12, 2024 hearing. The evidence presented at the hearing on October 13, 2024 establishes a prima facie case against the Defendant.

Defendant argues that he was transported illegally from Mercer County to Washington County for purposes of his preliminary arraignment. Defendant integrates a subject matter jurisdiction argument at the same time. As set forth above, Defendant's Motion to Dismiss: Improper Venue and Lack of Subject Matter Jurisdiction was denied by Judge Costanzo by way of an Opinion and Order entered on January 26, 2024. Furthermore, Defendant's argument is unclear as the Defendant agreed, on the record at the proceeding on March 12, 2024, that a detainer had been placed on him relating to the charges filed in Washington County. There is no evidence in the record to demonstrate that the Commonwealth utilized improper procedures to return Defendant to Washington County for his preliminary arraignment.

WASHINGTON CO PA
CLERK OF COURTS

---

[3] Defendant's reliance on *Commonwealth v. Manuel*, 2018 Pa.Super. 232, to support his argument, is misplaced. The *Manuel* case relates to the constitutionality of a search warrant and the determination of whether probable cause existed to support the issuance of a search warrant.

FILED

## ORDER

And now, this 1st day of April, 2024, upon consideration of Defendant's *Pro Se*

Motion(s)-In-Limine which was filed on March 7, 2024, and for the reasons set forth above, it is

hereby ORDERED, ADJUDGED and DECREED that Defendant's Motion(s)-In-Limine is

DENIED in its entirety.

BY THE COURT:

_____ J.

JESSE PETTIT, JUDGE